UNITED STATES of America,
Plaintiff–Appellee,

v.

Manuel OTERO, Defendant–Appellant.

No. 88–5583
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 23, 1989.

R. Clark Adams, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A defendant convicted of possession of cocaine with intent to distribute appeals his 90–month sentence. After determining the applicable offense level under the Sentencing Guidelines, the district court made an upward departure on the basis of its finding that a firearm was in the defendant's possession during his commission of the offense and the cocaine was of high purity. The adjustment for firearm possession was proper, but we remand for a hearing on whether the cocaine was of unusually high purity because the district court did not afford the defendant an opportunity to dispute the factual basis for this departure.

## I.

Manuel Otero and an undercover agent engaged in negotiations for the sale of a quantity of cocaine. On April 8, 1988, the agent purchased approximately one ounce of cocaine from Otero in Laredo, Texas. Thereafter, the agent and Otero agreed that Otero would deliver approximately twenty ounces of cocaine to the agent for $20,000. The deal was to take place in Laredo, but the parties eventually decided to consummate the transaction in San Antonio. On April 15, after telephone conversations, Otero and the undercover agent met in room 154 at the La Quinta Motor Lodge in San Antonio. Otero delivered two packages of cocaine to the agent, one of 493.8 grams and one of 88.3 grams. Before any money was delivered, the agent gave an arrest signal.

After Otero was arrested the agents seized an additional package of 10.5 grams of cocaine from Otero's hotel room. The average purity of all the cocaine either delivered by or seized from Otero was 93%. The agents also searched Otero's van, where they found a Smith & Wesson .357 caliber handgun and five rounds of ammunition.

Otero pled guilty to distributing approximately twenty ounces of cocaine in violation of 21 U.S.C. § 841(a)(1). Because the offense took place after November 1, 1987, the Sentencing Guidelines apply to his sentence.[1] The applicable guideline for the offense recommends a sentence of from 63 to 78 months.[2] At the sentencing hearing, the judge made a two-level upward departure from the guideline and imposed a sentence of 90 months because he considered the purity of the cocaine and the defendant's possession of a firearm during the commission of the offense to be aggravating circumstances.

## II.

The Sentencing Reform Act of 1984 provides the statutory standard for reviewing sentences. Section 213(a) of the Act provides, in relevant part:

(d) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the

---

1. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 235 (codified as amended at 18 U.S.C. § 3551 et seq.).

2. Sentencing Guidelines § 2D1.1.

district court unless they are clearly erroneous.[3]

■ Otero does not contend that the sentence was improperly computed but that the record does not support the factual conclusions requisite to the upward adjustment for firearm possession and that the judge used an impermissible factor in departing from the guidelines to make the adjustment for cocaine purity. While we review the application of the guidelines fully for errors of law, we accept the fact findings of the district court absent clear error.

The trial court must sentence a convicted defendant to a term within the range provided by the Sentencing Guidelines, unless it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately considered by the Sentencing Commission in formulating the Guidelines." In determining whether the Commission adequately considered a factor, the court may look only to the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.[4]

Interpreting the statutory provision, the Sentencing Commission has explained the grounds for departure from the guidelines. Section 5K2.0 of the guidelines provides:

> [T]he court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (e.g., as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.
>
> Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.

The guideline for the offense to which Otero pleaded, distribution of a controlled substance, contains a specific-offense characteristic for possession of a firearm "during commission of the offense."[5] Policy Statement § 5K2.6 also refers to weapons. It provides:

> If a weapon ... was *used or possessed* in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase. (Emphasis added.)

■ Either use or possession of a firearm therefore suffices to support a sentence above the calculated guideline. The firearm need not, as Otero contends, have played a significantly more prominent role than it would in the ordinary case, whatever role firearms play in an "ordinary" case of cocaine distribution, for firearm use or possession per se is a permissible basis for upward adjustment. The commentary to Guideline § 2D1.1(b)(1) explains when an upward adjustment for weapon possession should be made:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

■ While Otero asserts, and the probation officer conceded, that Otero could not be convicted under Texas law for the misdemeanor offense of unlawfully carrying a weapon because he was traveling outside the county of his residence, that is not determinative. Otero mistakenly relies on *United States v. Prieto–Tejas;*[6] that case deals with an interpretation of 18 U.S.C.

---

3. 18 U.S.C. § 3742(d).

4. 18 U.S.C. § 3553(b).

5. Guideline § 2D1.1(b).

6. 779 F.2d 1098 (5th Cir.1986).

§ 924(c)(2), which formerly made it an element of the offense that carrying of a firearm during a crime be, in itself, illegal. The commentary to Section 2D1.1 indicates that the enhancement in the offense level for possession is not dependent on whether the weapon is carried illegally.

The record does not reflect that Otero possessed a firearm when the cocaine was delivered. The addendum to the presentence report, however, concludes that Otero transported the cocaine from Houston to San Antonio and that he had the firearm in his possession during the trip. The telephone communications between the undercover agent and Otero support the conclusion that Otero, who lived in Houston, decided to deliver the cocaine in San Antonio and that he traveled from Houston to San Antonio to do so. Thus the court's factual conclusion that Otero constructively possessed a weapon during the commission of the offense is not clearly erroneous.

With regard to the upward adjustment for "the unusually high purity" of the cocaine,[7] Otero does not contend that unusually high purity of a controlled substance may not justify an upward guideline departure, but asserts that the district court improperly considered this factor because he was not given notice of it; and he contends, in addition, that the court found the cocaine to be unusually pure without evidentiary support. The government contends that the description of the amount and the purity of the cocaine per se put Otero on notice of the existence of a fact that might justify a departure from the guidelines.

Federal Rule of Criminal Procedure 32(a)(1) provides, "At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and *on other matters relating to the appropriate sentence.*" This rule contemplates that the court may base its sentencing decisions on matters not raised in the presentence report. If, however, the court intends to rely on any such additional factor to make an upward adjustment of the sentence, defense counsel must be given an opportunity to address the court on the issue. Otherwise the purpose of Rule 32(c), to ensure the accuracy of sentencing information, would be defeated.[8] In this case, for example, neither the probation officer's report nor any action by the court put Otero on notice that the cocaine might be considered of unusually high purity or that, if it were found to be, the court might adjust the sentence imposed. There was, therefore, no opportunity for the defendant to raise his factual contention that 93% pure cocaine is not unusually pure.

Because the purity of the cocaine as a basis for an upward departure from the Guidelines was first mentioned when the trial judge imposed the sentence, we find that the judge did not comply with the comment requirement of Rule 32(a)(1). Furthermore, because the parties did not have an opportunity to address the issue, there was no evidence on which the district court could determine whether cocaine that is 93% pure is of "unusually high purity." We therefore vacate the sentence and remand the case for resentencing.

VACATED AND REMANDED.

---

**7.** *See* Sentencing Guidelines § 2D1.1 commentary.

**8.** *See* Fed.R.Civ.P. 32(c)(3)(A), (B) & (C) advisory committee's note on 1983 amendment.