**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Keith FRANKLIN, Defendant–Appellant.**

No. 89–1486.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1989.

Decided Feb. 26, 1990.

R. Jeffrey Wagner, Asst. U.S. Atty., Office of the United States Attorney, Milwaukee, Wis., for plaintiff-appellee.

Dennis P. Coffey, David T. Geraghty, Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant-appellant.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant Keith Franklin appeals the district court's upward adjustment of his sentence after he pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. We affirm.

## I. FACTUAL BACKGROUND

Unbeknownst to defendant-appellant Keith Franklin and his codefendant Mark Brown, a co-worker of theirs at Warner Cable Company in Milwaukee, Wisconsin, was a confidential informant for the FBI. As a result of workplace discussions with Brown and Franklin, the confidential informant learned that both men were involved in cocaine trafficking. On one occasion, Franklin informed the confidential informant that his job at Warner Cable was merely a "front" for his drug-trafficking enterprise.

On June 1, 1988, the informant met Brown at a Milwaukee restaurant to purchase an ounce of cocaine. Brown stated that he would have to go to another location to pick up the drug. Government surveillance revealed that Brown drove to

Franklin's residence and waited for Franklin to return home. When Franklin arrived, Brown and Franklin entered Franklin's residence and Brown exited alone ten minutes later. Brown drove directly to a prearranged meeting place and delivered an ounce of cocaine to the informant. On June 17, 1988, Brown again agreed to sell the informant an ounce of cocaine. Brown once more rendezvoused at Franklin's residence immediately before delivering the cocaine to the informant.

On August 3 and 4, 1988, Brown and the informant had several telephone conversations regarding the purchase of a kilogram of cocaine. Brown indicated that he and his source would only sell the requested amount in ten ounce increments for $9,500.00 per ten ounces. The informant agreed to Brown's terms and the initial sale was scheduled for the following day. On the morning of August 5, 1988, government agents watching Franklin's automobile observed Franklin meet an unidentified black male. The unidentified suspect left Franklin's car carrying a white paper sack. A short time later, Brown, who was also carrying a white paper sack, met the informant at a prearranged location. After examining the contents of the sack, the informant signaled concealed government agents to arrest Brown. Brown fled in his automobile and led the agents on a brief high-speed chase. During his attempted getaway, Brown threw the paper sack out of his car window. The sack contained approximately ten ounces of cocaine. Brown was eventually arrested.

Following Brown's arrest, government agents arrested Keith Franklin at his place of employment. The agents then executed a search warrant at Franklin's residence. The search revealed fifteen ounces of cocaine contained in a small safe and one kilogram of cocaine in a bedroom closet. The search also uncovered $30,080.00 in cash, several packages of money wrappers, several boxes of plastic bags, two bottles of mannitol, a scale, a sifter, extensive drug records, three loaded handguns, and several boxes of ammunition. When executing a second search warrant for a search of Franklin's automobile, government agents discovered an additional 126 grams of cocaine and an empty kilogram wrapper with cocaine residue.

At his sentencing hearing, Franklin did not object to the district court's determination that he had a base offense level of 26 under Guidelines § 2D1.1(a)(3) for possession of 1,892 grams of cocaine with intent to distribute. Defense counsel did dispute several factual inferences contained in the presentence report that characterized Franklin as an "organizer, leader, manager, or supervisor" of the underlying drug distribution enterprise. Accepting this version of Franklin's role in the offense would have compelled the district court to enhance Franklin's offense level by two levels pursuant to Guidelines § 3B1.1(c). The district court decided to forego the section 3B1.1(c) enhancement, but did increase Franklin's offense level under Guidelines § 2D1.1(b)(1) by two levels because Franklin possessed firearms during the commission of the offense.[1] Because of the two-level enhancement, Franklin received an adjusted offense level of 28. The district court cross-referenced Franklin's offense level of 28 with his category I criminal history and arrived at a sentencing range of 78 to 97 months. The district court then imposed a sentence of 78 months imprisonment.

We must affirm the district court sentence unless it was "imposed in violation of law or . . . as a result of an incorrect application of the sentencing guidelines. . . ." 18 U.S.C. § 3742(f)(1); *see United States v. Guerrero*, 894 F.2d 261, 265 (7th Cir.1990); *United States v. Missick*, 875 F.2d 1294, 1300–01 (7th Cir.1989). Section 3742(e) of Title 18 requires that we give due regard to the district court's credibility determinations, accept the sentencing court's findings of fact unless they are clearly erroneous, and give due deference to the district court's application of the Guidelines to the

---

**1.** Section 2D1.1(b)(1) of the Guidelines provides, "If a dangerous weapon (including a firearm) was possessed during commission of the of-

fense, increase by 2 levels." *See also* Guidelines § 5K2.6.

facts. *See Guerrero*, 894 F.2d at 265; *Missick*, 875 F.2d at 1301. Franklin concedes that he possessed three handguns during the commission of his offense but contends that the district court erred in applying the section 2D1.1(b)(1) firearms enhancement to his base offense level.

## II. ANALYSIS

Franklin alleges that the mere presence of firearms in his residence does not rise to the level of "possess[ion] during commission of the offense" as contemplated by Guidelines § 2D1.1(b)(1). The appellant maintains that application note 3 to section 2D1.1(b)(1) would preclude a two-point enhancement in his case. Application note 3 states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

Franklin asserts that his three loaded handguns are more akin to a confined and unloaded hunting rifle rather than a drug-trafficker's arsenal. Franklin also contends that his case is distinguishable from those cases in which courts have applied the section 2D1.1(b)(1) sentence enhancement provision. *See United States v. Franco–Torres*, 869 F.2d 797 (5th Cir.1989) (affirming section 2D1.1(b)(1) enhancement where government agent testified that defendant shot at him, despite the defendant's denial and the government's failure to find the gun); *United States v. Weidner*, 703 F.Supp. 1350 (N.D.Ind.1988) (applying section 2D1.1(b)(1) to a defendant who had rigged a "spring gun" to an entrance to a barn where the defendant cultivated and stored marijuana plants, even though the gun did not fire when agents raided the barn), *aff'd*, 885 F.2d 873 (7th Cir.1989). In essence, Franklin argues that it was "clearly improbable" that the handguns discovered during the search of his residence were connected to any offenses in the indictment.

We have recently decided an analogous case involving a challenge to a district court's application of section 2D1.1(b)(1). In *United States v. Rush*, 890 F.2d 45 (7th Cir.1989), we determined that possession of a loaded firearm in an automobile provided a "solid foundation" for the district court's imposition of the section 2D1.1(b)(1) two-level enhancement. The defendant in *Rush* was arrested in Union Station in Chicago after drug agents discovered gift-wrapped packages of heroin during their search of the luggage Rush was carrying. Drug Enforcement Administration ("DEA") agents seized Rush's automobile when they learned that it was parked outside the exit toward which Rush and his codefendant had been walking before they were stopped. Approximately four months after Rush's arrest, a DEA agent assigned to remove a cellular phone from Rush's car found a loaded pistol behind a loose rear seat backrest. We noted that Rush's car was "an essential part of the crime of possession with intent to distribute" and that the loaded handgun provided some measure of comfort to one in the perilous drug trade. *Id.* at 52.

The nexus between Franklin's crime and the possession of loaded weapons is more compelling than was the case in *Rush*. The defendant in *Rush* could at least raise the futile argument that his crime was interrupted before he was in the presence of his weapon. Franklin does not and cannot dispute the propinquity of his offense and his loaded firearms. Several courts of appeals have similarly interpreted the section 2D1.1(b)(1) sentence enhancement provision and upheld its application in a variety of circumstances. *See United States v. Paulino*, 887 F.2d 358, 360 (1st Cir.1989) (loaded semi-automatic pistol found in same building as illegal narcotic and in same room as drug proceeds); *United States v. Gillock*, 886 F.2d 220, 222–23 (9th Cir.1989) (weapons and drugs seized from same closet); *United States v. Restrepo*, 884 F.2d 1294, 1296–97 (9th Cir.1989) (loaded automatic pistol found between mattress and box spring in home where drugs seized);

*United States v. Holland,* 884 F.2d 354, 358–59 (8th Cir.1989) (two handguns found in defendant's residence where drugs seized); *United States v. McGhee,* 882 F.2d 1095, 1096 (6th Cir.1989) (weapons concealed in secret compartment of walls along with cocaine); *United States v. Hewin,* 877 F.2d 3, 4 (5th Cir.1989) (handgun discovered on backseat of automobile containing marijuana in trunk); *United States v. Jones,* 875 F.2d 674, 675–76 (8th Cir.) (per curiam) (gun found in close proximity to drugs seized), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. White,* 875 F.2d 427, 433 (4th Cir.1989) (loaded handgun under driver's seat of automobile in which drugs seized from passenger); *United States v. Otero,* 868 F.2d 1412, 1414–15 (5th Cir. 1989) (drugs seized in defendant's hotel room and handgun found in defendant's van parked outside hotel); *cf. United States v. Vasquez,* 874 F.2d 250, 251 (5th Cir.1989) (error to enhance sentence where police found loaded pistol in defendant's bedroom, but his arrest occurred several miles away at the scene of the purchase, and the government failed to show that the gun and the drugs were ever less than several miles apart).

### III. CONCLUSION

We find that under the facts of this case, it is not "clearly improbable" that Franklin's weaponry was connected to his drug offense. The district court's findings of fact were not clearly erroneous, and, giving due deference to the sentencing court's application of the Guidelines to those facts, we find no error. Franklin's sentence is therefore AFFIRMED.