UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro RODRIGUEZ–NUEZ,
Defendant–Appellant.

No. 89–2203.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1990.

Decided Dec. 3, 1990.

R. Jeffrey Wagner, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Jess Martinez, Jr., Waukesha, Wis., for defendant-appellant.

Before RIPPLE and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

The defendant, Pedro Rodriguez–Nuez, pled guilty to Count IV of an indictment charging him with possessing with intent to distribute approximately four kilograms of a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1). By agreement, the government dismissed four other counts, one of which had charged possession of heroin on the same day. Mr. Rodriguez–Nuez appeals the sentence imposed.

Section 841(b)(1)(B) provides a minimum term of imprisonment of five years, and a maximum of forty. Mr. Rodriguez–Nuez was subject to sentencing under the Federal Sentencing Guidelines. Under the Guidelines, he falls in Criminal History Category I, and was deemed to have an Adjusted Offense Level of 34, yielding a sentencing range of 151 to 188 months imprisonment. He was sentenced to 151 months of imprisonment (twelve years, seven months), followed by four years of supervised release.

In determining the Base (unadjusted) Offense Level, Judge Reynolds took into consideration the four kilograms of cocaine mixture charged in Count IV (treated as the equivalent of 800 grams of heroin mixture), and the eight ounces (226.8 grams) of heroin mixture seized at the same time as the cocaine, and charged in a dismissed count. Treating the cocaine as the equivalent of 800 grams of heroin, *see* Application Note 10, § 2D1.1, this produced a total of 1026.8 grams of heroin, which calls for a Base Offense Level of 32. § 2D1.1(c)(6). This was increased by two levels for possession of a firearm during the offense (§ 2D1.1(b)), increased by two more levels because Mr. Rodriguez–Nuez was found to be a supervisor (§ 3B1.1(c)), and decreased by two levels because of his acceptance of responsibility (§ 3E1.1(a)). This resulted in an Adjusted Offense Level of 34. The defendant challenges the inclusion of the heroin in selecting the base level, and the two upward adjustments.

I. Facts Related in the Presentence Report

Mr. Rodriguez–Nuez owned a duplex at 1216–1218 West Greenfield Avenue in Milwaukee, and lived in the upper half. Vincent Quiroz, a co-defendant, and his brother David Quiroz lived in the lower half. A confidential informant told state officials in early September 1988 that Mr. Rodriguez–Nuez had showed him $32,000 in cash stored in the downstairs part of the duplex. On the 22nd of September, Vincent Quiroz showed the informant two kilograms of cocaine in the basement. Two days later, the informant bought an ounce of cocaine from Mr. Rodriguez–Nuez and Mr. Quiroz at the duplex. The ounce cost $900, but the informant only had $700, so he left owing $200. While at the duplex, the informant noticed that there were still six to eight ounces of cocaine in the basement when he left. The informant claimed that while talking with the two men, he learned that David Quiroz would be leaving Milwaukee shortly for Mexico to pick up fifteen kilograms of cocaine.

On the evening of September 28, the informant called Vincent Quiroz. Vincent told the defendant that "Dave" was not back yet, and said that today was the deadline for paying the outstanding $200 he owed for the ounce of cocaine, and that he had to pay the money before getting more cocaine.

On October 7, 1988, state agents searched the duplex at 1216–1218 West Greenfield. Just before they went in, a cardboard box with $4,500 cash was thrown out the second floor window. Mr. Rodriguez–Nuez was found on the second floor, along with a .45 caliber semi-automatic rifle, a mirror containing cocaine residue, a pager, and a mobile telephone. Vincent Quiroz was arrested on the first floor of the duplex, where a search turned up $12,000 cash in a paper bag in a dishwasher, a mirror with cocaine residue and a loaded .38 caliber pistol.

Between September 28 and October 7, Mr. Rodriguez–Nuez had been followed by government agents from his duplex to a residence at 5927 West Greenfield, also in Milwaukee. On October 7, after having searched the duplex, state agents searched this residence. This search turned up four kilogram packages of cocaine with two of the defendant's fingerprints (the subject of Count IV), eight ounces of heroin (the subject of one of the dismissed counts), $34,000 cash, a money counting machine, packaging material for drugs, and a triple beam scale. A neighbor of this residence told agents that a group of hispanic individuals had rented the residence about a month earlier, and although no one ever stayed overnight there, people frequently would enter, and then leave shortly. The landlord

identified Mr. Rodriguez–Nuez as the man who had rented the residence under the name "Cevino Rodriguez." The residence's utilities were listed under the same name.

The presentence report also noted that Mr. Rodriguez–Nuez made certain statements following his arrest: the money thrown out the upstairs window of the duplex was profits from his previous night's poker winnings; he was keeping the rifle found upstairs for a friend who was out of state; and he had no association with the apartment at 5927 West Greenfield. He admitted owning the handgun found downstairs in the duplex, and that he usually kept a weapon down there.

Mr. Rodriguez–Nuez filed ·objections to the presentence report, and included his own version of the offense.[1] He explained that he became involved with cocaine only after becoming unable to work due to a back injury. He agreed to work for Antonio Ruiz, who told Mr. Rodriguez–Nuez that he would be responsible for holding cash and packages of cocaine until someone picked them up, or they were depleted. He admitted selling ounce quantities of cocaine beginning in January 1987, and receiving a $100 profit per ounce. He would meet Mr. Ruiz at 59th and Greenfield to pick up cocaine and hand over money he had obtained. He denied ever having kilo quantities of cocaine, and denied selling any heroin.

Mr. Rodriguez–Nuez also indicated in his version of the offense that Vincent Quiroz, who was new in town, became involved through him. Mr. Quiroz would call, and say he had someone who wanted to purchase cocaine, and Mr. Rodriguez–Nuez would get it from the West Greenfield residence and give it to Mr. Quiroz. He denied ever showing the confidential informant the $32,000 cash, or having ever dealt with

kilogram quantities of cocaine. He again admitted that the pistol found in the duplex was his, but now claimed he did not know how it got downstairs and that it was usually upstairs and not loaded.

## II. Determination of the Base Offense Level

■ Mr. Rodriguez–Nuez points out that the two counts which charged him with possessing and conspiring to distribute the heroin were dismissed pursuant to the plea agreement, and argues that it was fundamentally unfair to increase his sentence based on the conduct underlying these counts.

This court has recently held that Guidelines Sections 1B1.3(a)(2) and 3D1.2(d) provide for cumulating quantities of drugs which were not part of the offense of conviction, when determining the Base Offense Level, if those quantities were "part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989) (quoting § 1B1.3(a)(2)); *United States v. White*, 888 F.2d 490 (7th Cir.1989).[2] This includes quantities of drugs contained in counts dismissed pursuant to a plea agreement. *United States v. Salva*, 902 F.2d 483, 488 (7th Cir.1990); *Vopravil*, 891 F.2d at 157; *United States v. Wright*, 873 F.2d 437, 440–41 (1st Cir.1989).

By his plea, Mr. Rodriguez–Nuez admitted possessing, with intent to distribute, approximately four kilograms of a mixture containing cocaine. This must have been the four kilograms found on October 7, in the residence at 5927 West Greenfield. The heroin was found in this same place, along with $34,000 cash, a money counting machine, packaging material for drugs, and

---

1. Because the defendant did not include his objections and version of the offense in the record on appeal, we rely on the summary of them contained in the presentence report.

2. Section 1B1.3(a) provides in part that "Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

Section 3D1.2 calls for the grouping together of closely-related counts which involve "substantially the same harm."

a triple-beam scale. The residence had been rented by Mr. Rodriguez–Nuez using a given name other than his own, and he and others frequented it, yet no one ever stayed the night. While the defendant denied ever selling heroin, the district court was not obliged to accept his statement. The heroin was in a quantity large enough to imply an intent to distribute, and was connected by location with the cocaine.

The district court found that the possession of the heroin was part of the same course of conduct as possession of cocaine, the offense of which defendant was convicted. This finding was not clearly erroneous.[3]

## III. Upward Adjustments of the Offense Level

A. *Section 3B1.1(c) Enhancement for Role in Offense.* The district court enhanced Mr. Rodriguez–Nuez's Offense Level by two, based on its finding that the defendant was a supervisor under § 3B1.1(c).

■ The cocaine which was the subject of the offense of conviction was located at 5927 West Greenfield. Defendant was in control of those premises. One element of the offense was an intent to distribute the cocaine. In the past, defendant had removed quantities of cocaine and distributions had been made through Vincent Quiroz, at the duplex forty-seven blocks to the east, and presumably the same would be true of the distributions which defendant admitted he intended to make of the cocaine seized. There was an adequate basis for the district court's finding that the defendant "supervised" Vincent Quiroz, but the information before the court showed only that Mr. Quiroz had been a participant in distribution of cocaine at the duplex, and it could be inferred that he would be a participant in the contemplated distribution of the cocaine seized. The problem is that there was no information showing that he was a participant in the possession of the cocaine at 5927 West Greenfield.

Under these facts, can defendant's supervision of Mr. Quiroz in the past and contemplated distributions at the duplex be a predicate for a § 3B1.1(c) enhancement of defendant's sentence for the offense of possession with intent to distribute when there is nothing to show Quiroz was a participant in that offense?

A recent decision of this court requires an answer in the negative. *United States v. Tetzlaff,* 896 F.2d 1071 (7th Cir.1990). There also defendant was convicted of possession with intent to distribute and no other person was shown to have been a participant in that possession. We said:

> The problem with the sentence imposed by the district court is that it applied Guidelines § 3B1.1(c) to a defendant who was convicted of the Count V offense that only involved himself. Guidelines § 3B1.1(c) requires the sentencing judge to look at "the defendant's role in the *offense*" of conviction, here Count V, not his role in any relevant aggravating *conduct* in which he may have engaged.

> *       *       *       *       *       *

> The plain language of Guidelines § 3B1.1 requires that the sentencing court focus on the "defendant's role in the offense," rather than other criminal conduct.

896 F.2d at 1074 (emphasis in original, footnote omitted) (citing *United States v. Williams,* 891 F.2d 921, 925 (D.C.Cir.1989); *United States v. Nuno–Para,* 877 F.2d 1409, 1413 (9th Cir.1989)). The Fifth Circuit followed *Tetzlaff* in *U.S. v. Pettit,* 903 F.2d 1336, 1341 (10th Cir.1990). Pettit had been convicted of possession with intent to distribute and it was not shown that others had been involved in that offense.

---

**3.** Mr. Rodriguez–Nuez also objects to any consideration of the two kilograms of cocaine which were shown to the confidential informant in the duplex's basement. Judge Reynolds explicitly did not rely upon these drugs. Even if he had, they would not elevate the Base Offense

Level. *See* § 2D1.1(c)(6). And, because he imposed the shortest sentence within the applicable Guideline range, the district court's awareness of this quantity of drugs could not have hurt Mr. Rodriguez–Nuez.

The information before the district court at sentencing indicated that in the past there must have been short periods of time during the process of distribution when cocaine was in the immediate possession of Mr. Quiroz at the duplex and was simultaneously in the constructive possession of defendant. It is clear, however, that defendant's conviction involved his possession at 5927 West Greenfield on October 7, before any of that cocaine had been transferred to Quiroz. Defendant was not convicted of any distribution. Under *Tetzlaff*, Defendant's supervision of Quiroz in the distributions, either past or contemplated, cannot be a predicate for a supervisory role enhancement.

B. *Section 2D1.1(b)(1) Enhancement for Possession of a Firearm.* Guideline § 2D1.1(b)(1) says that "If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels." The district court enhanced Mr. Rodriguez–Nuez's offense level under this provision based on the unloaded rifle upstairs at the duplex, and the loaded pistol downstairs, finding that "the weapons are there to facilitate the drug business."

■■■■■ Here, again, we have a problem arising from the distance of several miles between the 5927 West Greenfield residence and the duplex. The cocaine was at 5927 West Greenfield and the weapons at the duplex. At the time of arrest, defendant was at the duplex, but there is nothing to show that he carried either weapon when he went to the other site. Defendant's possession of the weapons was contemporaneous with his commission of the offense, but it is clear from the Guidelines and court decisions that contemporaneity is not enough. There must be some proximity of the weapon to the contraband (if not also to the defendant or some person under his control).

If the weapon was present at the scene of the offense, the enhancement should be applied, "unless it was clearly improbable that the weapon was connected with the offense." Application Note 3, § 2D1.1. Physical proximity of the weapon and con-

traband is usually enough to support an enhancement. *See United States v. Franklin*, 896 F.2d 1063, 1065–66 (7th Cir. 1990) (citing cases). *But see* Application Note 3 ("[T]he enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."); *United States v. North*, 900 F.2d 131, 134–35 (8th Cir.1990) (unloaded shotgun and inoperable rifle found in son's room did not support enhancement of the father's offense level, even though the weapons were accessible to the father), *reh. denied.* There need not be an *exact* proximity of the contraband and weapons, so long as other evidence connects the weapons to the crime. We held in *United States v. Rush* that the presence of a gun in a car toward which the defendant was headed when he was intercepted by the police was sufficient to support an enhancement. 890 F.2d 45, 52 (7th Cir.1989). Since the defendant had keys to the car, and would have reached it but for the officers' intervention, the possession of the gun was properly charged to him. *Id.* at 52.

It is true that in *U.S. v. Paulino*, 887 F.2d 358, 359–60 (1st Cir.1989), the First Circuit affirmed a gun enhancement where the defendant's gun was found in an apartment where drugs were evidently sold, and the supply of drugs was found in a different apartment. The *Paulino* court held that "Given the facts of the instant case," it was not clearly improbable that the gun was connected to the offense of possession with intent to distribute. We think it is significant, however, that the two apartments were in the same building, although reached through different entrances. In our case, the locations were miles apart.

The connection between the weapons and drugs in this case is much more remote than it was in *Rush*, or in any other case we have found approving a § 2D1.1(b)(1) enhancement. Section 2D1.1's Application Note 3 says "[t]he adjustment should be applied *if the weapon was present....*" There was no evidence that the defendant ever possessed the guns at the same time he was close to the seized cocaine. There

*was* solid evidence that drug dealing took place at the duplex, and it would be reasonable to infer that the guns had been present during these transactions and would be in the future. However, § 2D1.1(b)(1) says that the weapons must be possessed "during the commission of the offense," and this must mean the offense *of conviction. See* § 1B1.2(a) (directing the sentencing court to "[d]etermine the offense guideline in Chapter Two (Offense Conduct) most applicable to the offense of conviction.")

This case is closely similar to *United States v. Vasquez,* 874 F.2d 250 (5th Cir. 1989). Mr. Vasquez had pled guilty to possession with intent to distribute cocaine after buying drugs from an agent. A subsequent search of his apartment turned up a loaded gun, drug paraphernalia, but no drugs. He admitted to owning the gun during the period in which he was dealing in drugs, but the court nevertheless held that it could not be said that the "weapon was 'possessed during commission of the offense' of possession, Guidelines § 2D1.1(b)(1), or that the weapon was 'present' *and* that it is probable that the weapon was 'connected with the offense.'" *Id.* at 251 (emphasis in original, footnote omitted). As noted by the First Circuit in *Paulino,* the *Vasquez* court concluded that "There is no showing that the gun and drugs were ever less than several miles apart." The court distinguished a case where the defendant had sold cocaine to agents after having transported the cocaine in a van with a gun. *Id.* (*See United States v. Otero,* 868 F.2d 1412 (5th Cir.1989)).

We think sufficient proximity of the weapons to the seized cocaine or other connection has not been established, and it was error to add a two-level enhancement under § 2D1.1(b)(1).

IV. Conclusion

■ Because of the novelty and complexity the Federal Sentencing Guidelines have introduced into sentencing decisions, we have asked district courts to present their sentencing findings in a concise, easily ac-

cessible form. *United States v. Salva,* 894 F.2d 225, 230 (7th Cir.1990). We now ask for appellate counsels' aid, too. It would greatly help this court (and would result in more effective advocacy) if appellants, when challenging a sentence imposed under the Guidelines, would clearly and concisely explain in their briefs on appeal the basis for the sentence imposed, and their objections to it. The minimum information included should be: the Criminal History Category the defendant was found to fall within, and the reasons for arriving at that category; the Base Offense Level and how it was determined, and any upward or downward adjustments made to the Base Offense Level through Special Offense Characteristics; the resulting Adjusted Offense Level; the guideline sentencing range produced from the intersection of the Criminal History Category and the Adjusted Offense Level; and finally, if applicable, any upward or downward departure from that range taken by the district court and its reasons for doing so. Then, the appellant should indicate with specificity which steps of the sentencing determination are objected to, and why. Even if an appellant is not objecting to each step, it invites confusion for counsel to launch an attack on one specific element of the sentencing decision without clearly explaining the underlying predicate for the sentence.

We sustain the determination of a Base Offense Level of 32, but find the two enhancements unauthorized. Applying the two level decrease because of acceptance of responsibility, an adjusted offense level of 30 results. The sentencing table yields a range of 97 to 121 months imprisonment. Accordingly, insofar as the term of imprisonment exceeds 97 months, the sentence is VACATED and the case REMANDED for resentencing within the range, consistent with this opinion.

MANION, Circuit Judge, concurring in part and dissenting in part.

While I concur in the majority's conclusion that the district court correctly determined the amount of drugs to be used in computing Rodriguez–Nuez' base offense

level, I dissent from its reversal of the district court's two-level enhancements for Rodriguez–Nuez' role as a supervisor and his possession of dangerous weapons during commission of the offense. I would affirm the sentence imposed by the district court.

This court concludes *United States v. Tetzlaff*, 896 F.2d 1071 (7th Cir.1990), requires rejection of the supervisor enhancement under Guideline § 3B1.1(c). *Tetzlaff* holds that, to be eligible for the supervisor enhancement, a defendant must supervise someone in the actual offense for which he is convicted. The majority concludes Rodriguez–Nuez did not supervise anyone in the "possession with intent to distribute" offense to which he pleaded guilty. *Tetzlaff* is distinguishable, and the facts of this case support the supervisor enhancement.

In *Tetzlaff*, the defendant was indicted on four counts [1] of selling cocaine to undercover agents; two of the four were for sales where his children were directly involved. The count to which he pleaded guilty, however, involved only Tetzlaff from beginning to end. Tetzlaff obtained the cocaine and, unlike previous sales, was alone when he sold it to undercover agents in his apartment. The court specifically noted that his "children had no involvement" in the transaction. Thus the supervisor enhancement was inappropriate.[2]

We must give "due deference" to the district court's application of the guidelines to facts not found to be clearly erroneous. 18 U.S.C. § 3742(d); *United States v. Herrera*, 878 F.2d 997, 999–1000 (7th Cir.1989). In this case, Rodriguez–Nuez made previous distributions through Vincent Quiroz. This court acknowledges that there was evidence to support the district court's conclusion that Rodriguez–Nuez "supervised" Quiroz. Further, the court agrees that "it could be inferred that [Quiroz] would be a participant in the contemplated distribution of the cocaine seized." *Ante* at 465. It is reasonable to conclude, as the district court

did, that this evidence shows that Rodriguez–Nuez was supervising Quiroz in the planned distribution of the seized cocaine. True, Quiroz was not involved in Rodriguez–Nuez' Oct. 7 possession of the cocaine. But he was convicted of "possession *with intent to distribute*," not just possession. If this court agrees that sufficient evidence shows Rodriguez–Nuez intended to distribute the Oct. 7 cocaine through Quiroz, given our deferential standard of review there is also enough evidence to support the district court's two-level supervisor enhancement.

This court, troubled by the distance between the firearms and the seized drugs, rejects the district court's two-level enhancement for possession of a dangerous weapon during commission of the offense under Guideline § 2D1.1(b)(1). The drug activity occurred at two separate locations: the duplex where Rodriguez–Nuez lived, and the home a few miles down the street where the drugs were stored. Evidence supports the conclusion that drugs came through the duplex either before or after being stored at the house—cocaine residue was found in mirrors at the duplex, and a government informant testified he bought cocaine from Rodriguez at the duplex. And of course no guns were found at the house where the drugs were stored; it was uncontroverted that Rodriguez–Nuez used the house for storage only, and stopped there for only a few minutes at a time, and never overnight. The guns—a .45 caliber semi-automatic rifle, and a loaded .38 caliber pistol—were kept at the duplex where Rodriguez–Nuez lived, but also where drug transactions obviously occurred. It is also quite possible that he carried the weapons with him when he picked up or delivered cocaine to the storage house, but it is understandable why he would not leave them there.

The cases cited by the majority do not demonstrate that the district court's decision is erroneous. *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989) is not

---

1. An additional count involved only the children.

2. Similarly, in *United States v. Pettit*, 903 F.2d 1336 (10th Cir.1990), the supervisor enhance-

ment was inappropriate because there was no evidence that Pettit planned or intended to supervise anyone in the distribution of the cocaine for which he was convicted.

"closely similar" to our case. *Ante* at 467. In *Vasquez,* the defendant bought drugs from a federal agent in a car several miles from his home. A subsequent search of his home uncovered weapons. The Fifth Circuit relied on the fact that the drugs were provided by a government agent and indisputably never went near the defendant's weapons. Our case is much closer to *United States v. Paulino,* 887 F.2d 358 (1st Cir.1989). There the defendants resided in an apartment where police found cash and a loaded semi-automatic pistol. In the same apartment building, but in a separate unfurnished apartment with a separate entrance, the police found drugs. The First Circuit applied the two-level enhancement, even though there was no evidence the drugs and weapons were ever in the same apartment. This case is similar to *Paulino* in that two locations were used for drug activity—one where the drugs were stored, and another where the defendants lived, sold drugs and kept drug paraphernalia. The only difference is that the locations in this case were further apart. Given all the evidence before the district court, however, it was not "clearly improbable that the weapon[s] [were] connected with the offense." Commentary n. 3, § 2D1.1. The two-level enhancement was appropriate.