956 F.2d 273
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael L. LAMON, a/k/a Michael L. Anthony, a/k/a Michael L.
Black, Defendant-Appellant.
 No. 91-2711.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 10, 1992.[1]
Decided Feb. 27, 1992.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 89 CR 134, Thomas J. Curran, Judge.
 E.D.Wis. [930 F.2d 1183, APPEAL AFTER REMAND.]
 AFFIRMED.
 1Before CUMMINGS, CUDAHY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 
 ORDER
 
 1
 Michael Lynn Lamon appeals the application of a penalty enhancement to his sentence for a federal drug crime. We affirm the district court's decision.
 
 I. FACTS
 
 2
 Michael Lamon was sleeping with his girlfriend at his side and his Llama 9 mm. pearl grip pistol under his pillow when police executed a search warrant at his part-time residence. Officers found a gram scale, two pagers, a portable cellular telephone, more than four hundred dollars cash, and a small package containing more than three grams of cocaine. Subsequently, officers searched Lamon's car that was parked in front of the house. The car search turned up several kilograms of cocaine.[2]
 
 
 3
 The discovery of the cocaine in the car, although not the cocaine in the house, led to Lamon's indictment and conviction by a jury on three counts: (1) conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, (2) possession of approximately three kilograms of cocaine with intent to distribute, and (3) knowingly using or carrying a firearm (the "pillow" pistol) during and in relation to a drug-trafficking crime. This court set aside the convictions on counts one and three. United States v. Lamon, 930 F.2d 1183 (7th Cir.1991). Lamon was sentenced to 78 months imprisonment on count two, the possession charge. The district court increased Lamon's base offense level two notches because Lamon possessed the pistol in the house at the same time he constructively possessed the cocaine in the car. He appeals the enhancement, arguing that the district court wrongly applied the two-level increase in this situation.
 
 II. ANALYSIS
 
 4
 If a person possesses a dangerous weapon while committing a drug offense, the United States Sentencing Guidelines require that the person's base offense level be enhanced two levels. U.S.S.G § 2D1.1(b)(1) (1991). The court need only find by a preponderance of the evidence that the person possessed the dangerous weapon while committing the drug offense. United States v. Welch, 945 F.2d 1378, 1385 (7th Cir.1991). "Possessing a dangerous weapon" for these purposes occurs when geographic and temporal proximity exists between the drugs involved in the underlying offense and the weapon. United States v. Edwards, 940 F.2d 1061, 1063-64 (7th Cir.1991). A lack of proximity between the drugs and the weapon at the time of arrest is not dispositive whether the enhancement will apply. See United States v. Rush, 890 F.2d 45 (7th Cir.1989); see also United States v. Rodriguez-Nuez, 919 F.2d 461 (7th Cir.1990). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Commentary to U.S.S.G. § 2D1.1(b)(1) (1991).
 
 
 5
 In cases when either drugs or weapons have been discovered in cars, but not in the presence of the other element, courts have often found the requisite proximity to trigger the penalty enhancement. In these cases, the courts found that the cars transported both elements en route to the location where the arrest occurred, United States v. McDowell, 918 F.2d 1004 (1st Cir.1990); United States v. Otero, 868 F.2d 1412 (5th Cir.1989), or were to be used to transport both elements from the location where the arrest occurred. Rush, 890 F.2d 45. In Rush, the defendant was apprehended in a train station while carrying drugs. When arrested, the defendant was making his way to a car and its driver that were waiting for him outside the station. The car was impounded, and much later a weapon was discovered hidden in the vehicle. The defendant was convicted of both conspiracy to possess and distribute heroin and possession with intent to distribute heroin. In that case, we affirmed the district court's application of the enhancement because the defendant was clearly making his way to the car, and had he been successful the gun would have been present at the same time as the defendant possessed the drugs. Rush, 890 F.2d at 52. We stated that the offense of conviction involved the car, and "had the crime not been interrupted, it would have continued through the very use of the car." Id.
 
 
 6
 The present situation is distinguishable from Rush. In this case, the locations of the drugs and gun are reversed. Lamon's conviction drugs were in the car and were not clearly linked to the pistol in the apartment. Also, nothing indicated that Lamon was planning to carry the gun from the house to the car or the drugs from the car to the house--thus if the crime had not been interrupted, its continuation may not have carried through to the elements being in the proximity as the elements were in Rush.
 
 
 7
 In a recent case we reversed application of the § 2D1.1(b)(1) enhancement because of lack of proximity between the weapon and the drugs. Edwards, 940 F.2d at 1061. In Edwards, the defendant delivered drugs to a buyer in a mall parking lot. The defendant was arrested shortly thereafter and the defendant's vehicle was searched. Officers recovered drugs and money. The following day officers searched the defendant's home, which was twenty-five miles from the place of arrest. There they found a number of weapons as well as assorted drug-packaging paraphernalia and other indicia of drug activity. We held that no evidence linked the offense of conviction--distribution of the cocaine in the parking lot--with the weapons located at the defendant's apartment. We noted the twenty-five mile distance between the cocaine exchange and the apartment, the inaccessibility of the gun to the defendant when he committed the offense, and that the conviction offense did not occur at or near the defendant's home. Id.
 
 
 8
 Edwards is also distinguishable from this case. Here, the defendant was charged with possession, not distribution. At the same time as he possessed the cocaine in the car, the "pillow" pistol was literally under his nose, not at a remote location. Also, only a short distance, not miles, separated the elements. The gun was fully accessible to Lamon concurrent to his possession of the cocaine.
 
 
 9
 Lamon's case falls somewhere between Rush and Edwards. Other circuits have ruled on similar situations in that middle ground. The Fifth Circuit decided a case where the defendant bought cocaine from an undercover agent in a parking lot remote from his home. United States v. Vasquez, 874 F.2d 250 (5th Cir.1989). He was subsequently charged with possession with intent to distribute that cocaine. Later during a search of the defendant's home, officers discovered various drug paraphernalia, large amounts of cash, and a revolver in a nightstand (separate from the paraphernalia and money). The court held that because the drugs for which he was arrested never reached his home, and because the crime was remote from his home, enhancement was inappropriate. The court reached this decision despite defendant's admission that he owned the gun during the same time period in which he was dealing drugs. Id. at 251.
 
 
 10
 In a First Circuit case, United States v. Paulino, 887 F.2d 358 (1st Cir.1989), the defendant was arrested when officers searched his apartment and discovered a large amount of cash, what appeared to be a drug-dealing ledger, and a 9 mm. pistol. In addition, they found a rent receipt for an apartment located in the same building, although the apartment possessed a different address and was accessible only through a different entrance. A later search of the other apartment uncovered a stash of heroin. The defendant was charged and convicted of possession of heroin with intent to distribute, and possession of a firearm by an illegal alien. The court applied the § 2D1.1(b)(1) enhancement to the heroin possession charge, although the drugs and the gun were located in different apartments. The court quoted the district court opinion, which stated that if both apartments were considered "part and parcel of the same premises, certainly [the gun] was present when the offense was committed...." The court's statement presupposes that geographic proximity necessarily exists on the same premises, a proposition for which we have found no other support. The circuit court continued to quote the district court, stating that even if the apartments were not the same premises, the money from the first apartment must have been from the sale of heroin, thus the money and drugs were clearly connected. The court was silent regarding use of the "clearly connected" analysis of the gun and the drugs if the apartments were not to be considered part of the same premises. The court affirmed the district court finding of geographic proximity without further analysis. Id., at 360.
 
 
 11
 We analyzed both Vasquez and Paulino in our decision in United States v. Rodriguez-Nuez, 919 F.2d 461 (7th Cir.1990). In Rodriguez-Nuez, the defendant owned or rented two residences. Cocaine was discovered in one residence, but the gun was located in a second residence several miles away. No evidence established that the weapon and the drugs were ever at the same site, and we held that § 2D1.1(b)(1) was inapplicable to that situation. We found Rodriguez-Nuez closely parallel to Vasquez because of the several mile distance between the elements in both cases. We distinguished Paulino because there, the gun and the drugs were much nearer. For the same reason, Paulino is factually more apposite to the present case than are Vasquez and Rodriguez-Nuez. Lamon's car was in front of the residence. Our prior decisions setting aside § 2D1.1(b)(1) increases have focused on the distance between the weapon and the drugs. We not hold that a car and a residence are the same "premises", however, the geographic proximity between the gun in the house and the drugs in the car in Lamon's situation fulfills the § 2D1.1(b)(1) "presence" requirement.
 
 
 12
 Because the gun has been determined to be present for § 2D1.1(b)(1) purposes, the adjustment should be applied unless the defendant shows that it is clearly improbable that the gun was connected with the offense. United States v. Durrive, 902 F.2d 1221, 1230 (7th Cir.1990). Lamon continues to advance the proximity argument, seemingly to establish that because the gun and the drugs were not together, then only governmental speculation connects the gun with the offense. This type of speculation was enough in the cases cited supra, and we will not reject such an argument without further distinction from Lamon. The defendant did not overcome the burden of showing the connection was clearly improbable.
 
 III. CONCLUSION
 
 13
 We must give due deference to the district court's application of guidelines to the facts. Rush, 890 F.2d at 52. The district court's holding that the gun, in effect, was present during commission of the underlying drug offense and that it was not clearly improbable that the gun and the crime were connected was within the court's discretion. Therefore, the district court did not err and the decision is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [2]
 Officers then obtained a warrant to search Lamon's permanent residence. There they recovered a triple beam scale, a cache of $1000 bundles totaling approximately $113,000, a supply of drug processing and packaging materials, cellular telephone and paging service documents, a .22-caliber revolver, a loaded .38-caliber revolver, a loaded .30-caliber sawed-off rifle, and a loaded .12-gauge shotgun