UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank LANDRY, Defendant–Appellant.

No. 89–3275.

United States Court of Appeals,
Fifth Circuit.

May 30, 1990.

Wiley J. Beevers, Curtis Gordon, Gretna, La., for defendant-appellant.

Joseph F. Iuzzolino, Robert J. Boitmann, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before KING, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant, Frank Landry ("Landry"), was convicted by a jury of conspiracy to distribute approximately 1.5 kilograms of cocaine hydrochloride, in violation of 21 U.S.C. § 846, and of possession with intent

to distribute 1.5 kilograms of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and (2). Landry was sentenced by the district court to twenty-five years imprisonment as to each count, to run concurrently, and a subsequent term of four years supervised release. The district court also fined Landry $25,000.00, and imposed a mandatory assessment of $100.00. Landry appeals his conviction and sentence. This Court affirms Landry's conviction but vacates his sentence and remands to the district court for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

On January 16, 1989, between 11:00 and 11:30 p.m., while on routine patrol, Officer Rodney Roy ("Officer Roy"), noticed a pickup truck parked in front of a business that was closed for the night. As Officer Roy drove by he saw the silhouette of a person inside, seated on the passenger side of the truck. Officer Roy then circled the block, parked his patrol car, and proceeded to investigate further.

Officer Roy approached the truck, and shined his flashlight into the cab through the back window.[1] He could see that the person who was sitting in the truck was a young woman. Officer Roy asked the young woman what she was doing and whom she was with. The young woman responded that she was with her father, who had gone into the nearby adult bookstore, while she waited for him. The young woman also told Officer Roy that her name was Johnnie May Landry (Roy later learned that her real name was Johnnie May Polk). Officer Roy then asked the woman to exit the truck. Officer Roy asked Polk for identification, and she responded that she did not have any, but that she was seventeen years old (she was in fact fifteen years old).

While making these inquiries of Polk, Officer Roy shined his flashlight into the cab and saw a yellow cellophane bag containing a large stack of money. This bag

was located in the middle of the seat. Officer Roy then asked Polk if her father normally carried around this amount of cash. Polk then attempted to get back into the truck and she reached for a brown leather bag which was sitting on the center hump of the floor of the truck. Fearing the presence of a weapon, Officer Roy reached into the truck and grabbed the bag to feel for a weapon. As Officer Roy pulled the bag closer to him, Officer Roy found that the bag was unzipped and Officer Roy could see cellophane bags filled with a white powder which Officer Roy believed to be cocaine. Officer Roy then called for backup assistance.

Moments later, appellant Landry approached the truck, and upon noticing Officer Roy, Landry apologized for parking his truck there. Officer Roy asked if the truck was his; Landry responded affirmatively. Officer Roy then ordered Landry to place his hands on the truck. Backup assistance then arrived and Landry was searched. Both Landry and Polk were advised of their rights and placed under arrest.

At the time of the arrest, the following items were seized from the truck: $4,970.00 in cash, 1.216 kilograms of cocaine, a portable telephone, a beeper, and a box of ziploc plastic bags. From Landry's person, police seized $1,165.25 in cash.

As stated above, Landry was convicted on two drug charges and sentenced to twenty-five years imprisonment. Landry appeals.

## II. DISCUSSION

### A. *Suppression of Evidence*

Landry argues that the district court erred in failing to suppress the evidence seized by the police on the night in question. Specifically, Landry claims that Officer Roy did not have reasonable articulable suspicion to question Polk and Landry, and that Officer Roy unlawfully arrested Landry.

---

1. There is some dispute as to which side of the truck Officer Roy approached, and whether a window was already rolled down, or whether the young woman rolled the window down when Officer Roy approached the truck.

The Supreme Court "has recognized that some brief detentions by law enforcement officers do not rise to the level of an arrest and may be supported by less than probable cause." *United States v. Roper*, 702 F.2d 984, 986 (5th Cir.1983) (citations omitted). If the initial stop was merely an investigatory stop, the intrusion will pass constitutional muster if "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968) (citations omitted). The Supreme Court articulated an example of an investigatory stop in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The Court held that a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of facts known to the officer at the time." *Id.*, at 146, 92 S.Ct. at 1923.

■ In the present case, the district court was entitled to find that Officer Roy had reasonable suspicion of illegal conduct to justify his decision to question Polk. It was between 11:00 and 11:30 at night and the truck was parked in front of a business that was closed for the night. Officer Roy testified that he believed that the absent driver might be breaking into the business premises or into other vehicles. Officer Roy's initial questioning of Polk was justified as an investigatory stop. *Roper*, 702 F.2d at 987.

■ After Polk got out of the truck, Officer Roy shined his flashlight into the cab of the truck and discovered the money which was in plain view. His use of the flashlight to aid his vision did not transform an otherwise valid plain view observation into an illegal search. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). After discovering the money, Officer Roy questioned Polk and, as Roy testified, "she [Polk] got really nervous." Record on Appeal, vol. 3, p. 17.

Polk then made an attempt to get back into the truck, and she reached for a brown bag on the floor. Fearing the presence of a weapon, Officer Roy restrained Polk, reached into the truck, and grabbed the bag to feel for a weapon. As Officer Roy pulled the bag closer to him, the bag opened and Officer Roy was able to see plastic bags filled with a white powder substance. Officer Roy took reasonable steps to secure his own safety. *United States v. Ullrich*, 580 F.2d 765 (5th Cir. 1978). Once Officer Roy grabbed the bag, the cocaine was in plain view.

■ Landry next argues that Officer Roy's initial detention of him amounted to an arrest requiring Officer Roy to inform Landry of Landry's *Miranda*[2] rights before questioning him about ownership of the truck. Landry contends that because *Miranda* warnings were not given, Landry's statements should have been suppressed. Under *Terry*, an officer may stop and question an individual suspected of criminal activity even though the officer has no probable cause to make an arrest. *Terry*, 392 U.S. at 22–23, 88 S.Ct. at 1880–1881. If a court finds the brief encounter to be a reasonable, investigatory stop under *Terry*, then it is not an arrest. Landry was not in custody, therefore Officer Roy was not obligated to give Landry a *Miranda* warning at that time.

Because Landry was approaching the vehicle in which Officer Roy had just discovered the cocaine, Officer Roy was justified in preventing Landry from entering the truck due to the possibility of hidden weapons in the truck. Officer Roy was also justified in asking Landry whether Landry owned the truck. After determining that the truck containing the money and the cocaine belonged to Landry, Officer Roy had probable cause to arrest and search Landry.

Finally, Landry argues that the discrepancy in Officer Roy's report regarding his reasonable articulable suspicion, and in his testimony regarding whether or not Polk rolled down the window, undermined Roy's

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

credibility. The district judge heard the testimony and made the credibility determination. This Court will not disturb that classic factfinding function.

The district court's admission of the evidence seized at the time of Landry's arrest did not constitute error. Officer Roy had reasonable articulable suspicion to address an inquiry to Polk, and while questioning her Officer Roy discovered the money and the cocaine which were in plain view. Once Officer Roy determined that Landry owned the truck, Officer Roy had probable cause to arrest Landry.

### B. *Sufficiency of the Evidence*

Landry contends that the district court erred in denying Landry's motion for judgment of acquittal and motion to set aside the jury verdict and enter a judgment of acquittal. The applicable standard for such claims is whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This Court has described the standard as follows:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc) (citations omitted), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Count I of the indictment charged Landry with conspiracy to distribute cocaine. To establish that a defendant violated 21 U.S.C. § 846 the government must "prove beyond a reasonable doubt that a conspiracy existed, the accused knew of the conspiracy, and he knowingly and voluntar-

ily joined it." *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988) (citations omitted). In the present case, no co-conspirators were named in the indictment. The government based its charge on Landry's possession of cocaine, a bag of cash, a portable telephone, and a beeper under the circumstances previously described. To explain why Landry necessarily conspired with others to distribute cocaine, the government presented as a witness a Drug Enforcement Agency ("DEA") agent who qualified as an expert on the drug trade.

Landry asserts that the government's evidence, including the expert witness was insufficient to prove beyond a reasonable doubt that Landry was involved in a conspiracy. Landry relies on *United States v. Vergara*, 687 F.2d 57 (5th Cir.1982), for the proposition that the agreement element of a conspiracy cannot be established by circumstantial evidence. In *Vergara*, this Court stated that "[a]n agreement between the coconspirators and the defendant need not be proved by direct evidence, but may be inferred from concert of action." *Id.*, at 61. This Court has also stated, "a person can be convicted of conspiring with persons whose names are unknown so long as the ... evidence supports their existence." *United States v. Klein*, 560 F.2d 1236, 1242 (5th Cir.1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978), *quoting, United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir.1976) (citations omitted).[3]

In *United States v. Price*, 869 F.2d 801 (5th Cir.1989), this Court determined that possession of a portable telephone supported an inference that the defendant communicated with his co-conspirators. This Court also concluded that the sheer volume of cocaine indicated that the defendant could not have acted alone. Similarly, in the case at bar, Landry was in possession of a beeper, a portable telephone, as well as a substantial amount of cocaine and money. The government's expert witness,

---

**3.** Landry's reliance on *United States v. Galvan*, 693 F.2d 417 (5th Cir.1982), is also misplaced. In *Galvan*, this Court reversed the defendant's conviction because the only evidence of Galvan's participation in a drug conspiracy was that he had loaned a truck and had made phone calls to someone arrested for possession of drugs. The case at hand presents a very different situation; Landry himself was in possession of the drugs when he was arrested.

the DEA agent, testified that the markings on the brick [4] of cocaine established that it came from Columbia. The DEA agent also testified that beepers and portable telephones are often used by drug dealers to communicate with co-conspirators. Additionally, the presence of the money, the other individually wrapped packages of cocaine, and the box of ziploc plastic bags strongly suggested that Landry was involved in either the buying or selling, or both, of cocaine. Such activity would be impossible to accomplish alone. The jury's conclusion that Landry conspired with unknown co-conspirators to buy and sell drugs was reasonable and supported by the evidence.

■ Count II of the indictment charged Landry with possession with intent to distribute. To establish that a defendant violated 21 U.S.C. § 841, the government must prove that the defendant knowingly possessed the drug and intended to distribute it. *United States v. Gardea–Carrasco,* 830 F.2d 41 (5th Cir.1987). Since Landry was in possession of the truck which contained the cocaine, the jury could reasonably conclude that Landry knowingly and willfully possessed the cocaine. "One who owns *or* exercises control over a motor vehicle in which contraband is concealed may be deemed to possess the contraband." *Hernandez–Palacios,* 838 F.2d at 1349 (citations omitted) (emphasis added).

Landry made direct statements to Officer Roy admitting ownership of the truck. One of Landry's witnesses testified that Landry frequently used this truck and that Landry intended to use it on the night in question to travel to the area where he was arrested. Another witness testified that he had spoken to Landry on the night of Landry's arrest by placing a call to Landry's portable phone. As previously noted, this portable phone was in the front seat of the truck, near the cocaine, and was seized by the police at the time of the arrest. In addition, Officer Roy testified that he discovered the cocaine in an unzipped brown leather bag on the front seat floor of the truck. Landry's wallet was found in this bag, and the contents of the wallet clearly support the conclusion that the wallet belonged to Landry. A reasonable trier of fact was entitled to find beyond a reasonable doubt that Landry was guilty as charged. Consequently, this Court will not disturb the jury's finding.

### C. *Kenner City Ordinance*

■ Landry contends that the Kenner City Ordinance, Section 7–103, which allowed for Officer Roy's initial investigatory stop is unconstitutional. This ordinance provides an 11:00 p.m. curfew for minors under the age of eighteen. First, it is not clear that Officer Roy relied on this ordinance when he made the investigatory stop. Officer Roy testified that he was concerned that the truck was parked in front of a closed business. Second, even if the curfew ordinance was the basis for the stop, the evidence seized pursuant to a search incident to an arrest based upon an officer's good faith reliance on a city ordinance not yet declared unconstitutional, is valid regardless of the subsequent judicial determination of its unconstitutionality. *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Even if we were inclined to do so, there is no justification for reaching out to find that Officer Roy lacked such a good faith belief that the statute was valid. Therefore, even if Officer Roy in fact relied on the ordinance, Landry's argument is unpersuasive.

### D. *Landry's Sentence*

Landry argues that the district court abused its discretion in upwardly departing from the United States Sentencing Guidelines ("USSG"). The presentence report determined that the sentence level for Landry was twenty-six with a criminal history category of two. The USSG suggests a sentence range between seventy and eighty-seven months. The district court departed significantly from this range and

---

**4.** At the time of Landry's arrest, the police seized cocaine that was packaged in eight clear plastic bags with a net weight of 208.8 grams.

The police also seized a brick-shaped package of cocaine labeled "USA5" with a net weight of 1,007.2 grams.

sentenced Landry to twenty-five years (300 months). The twenty-five year sentence imposed by the judge was almost three and one-half times the highest USSG recommended sentence.

"This Court will affirm a departure from the sentencing guidelines if the district court provides acceptable reasons for the departure, and the extent of the departure is reasonable." *United States v. Campbell,* 878 F.2d 164, 165 (5th Cir.1989) (citations omitted). In the present case, the district court stated during the sentencing hearing that an upward departure was appropriate because Landry "not only conspired and possessed cocaine with intent to distribute it, you [Landry] did it with the assistance of a minor, 15 years of age." Record on Appeal, vol. 7, p. 4. The district court concluded that the sentencing guidelines did not consider this factor, and therefore a departure was called for.

■ Landry first argues that the record was devoid of any evidence that Landry involved, or used the assistance of a minor. Landry contends that this absence of evidence to support the district judge's determination illustrates that the judge erred. The presentence report discusses Polk's presence only insofar as she was in the truck when Officer Roy went to investigate. The presentence report did not suggest an upward departure for any reason, nor did the government request an upward departure. Federal Rule of Criminal Procedure 32(a)(1) provides, "[a]t the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." This rule, and the guidelines themselves,[5] contemplate that the court may base its sentence on matters outside the presentence report. However, in the event that the district court intends to rely on such outside matters in making an upward adjustment, the district court must provide defense counsel with an opportunity to address the court on this issue. *United States v. Otero,* 868 F.2d 1412 (5th

Cir.1989). In *Otero,* the district court based an upward departure from the guidelines on the fact that the cocaine seized from Otero was of an unusually high purity. This Court vacated the sentence and remanded for resentencing because

[N]either the probation officer's report nor any action by the court put Otero on notice that the cocaine might be considered of unusually high purity or that, if it were found to be, the court might adjust the sentence imposed. There was, therefore, no opportunity for the defendant to raise his factual contention that 93% pure cocaine is not unusually pure.

*Id.,* at 1415. The *Otero* Court went on to conclude that since this factor was first mentioned when the district court imposed the sentence, there was no compliance with Rule 32(a)(1). The case at bar presents a similar situation. The presentence report in the instant case recites that Polk was at the scene of Landry's arrest and that she was fifteen years of age. This fact, however, was not suggested by the probation officer or the government as a basis for recommending an upward departure from the USSG. Furthermore, it was not until at the sentencing hearing itself that this fact was even mentioned by the district court as a basis for an upward departure. Thus, Landry was not given an opportunity to comment upon this fact at the sentencing hearing.

■ This Court next considers the reasonableness of the degree of departure from the guidelines. As stated above, the guidelines suggest a sentence range between seventy and eighty-seven months, however, the district court imposed a 300 month, or twenty-five year sentence. Landry argues that had he been *convicted* of the offense of involving a minor, in violation of 21 U.S.C. § 845b, the maximum sentence he could receive would be 108 months. The government argues that section 2D1.2 of the guidelines does not indicate or limit the extent of an enhancement of a base offense level provided under another provision. The government is correct

5. U.S.S.G. § 5K2.0.

that section 2D1.2 does not expressly relate to sentence enhancement. However,

> a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing.

U.S.S.G. § 5K2.0. Section 2D1.2 indicates that the drafters of the guidelines did consider what sentence would be appropriate for the involvement of juveniles in drug trafficking. Although the section does not apply directly to Landry's offenses, it indicates the drafter's position on the punishment adults should face for involving juveniles.

In *United States v. Diaz–Villafane*, 874 F.2d 43 (1st Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), the district court more than tripled the maximum guideline sentence because the defendant was an important drug supplier, faced pending drug charges, had significant personal profits from the drug venture, possessed very pure drugs, and used a minor to deliver drugs. The First Circuit addressed the issue of whether U.S.S.G. § 2D1.2 limited the extent to which the district court could upwardly depart based on the involvement of a minor. The Court upheld the sentence first, because the other reasons for departure were sufficient to support the sentence regardless of the involvement of a minor. Second, the Court concluded that the district court should not be bound to "search for the presence of each discerned circumstance elsewhere in the Guidelines, attribute a sentencing range to it, and then add the various sentences together before arriving at a final sentence." *Id.*, at 52. The present case, however, is clearly distinguishable from *Diaz–Villafane* because the involvement of the minor here was the *only* ground for the upward departure. Furthermore, although we agree that the district court is not

strictly bound by the adjustment specified in section 2D1.2, we conclude that the district court should explain its reasons for going beyond it, if on remand the district court decides to do so.[6] Even the presence of a juvenile at the scene of drug activity is of grave concern. However, the government presented no direct evidence that Polk was either involved in the conspiracy, or bought, sold or used drugs.

We are constrained to conclude that under the facts of this case, the district court's departure from the guidelines was unreasonable.

### III.  CONCLUSION

This Court affirms Landry's conviction. However, we vacate the sentence imposed and remand for resentencing in accordance with this opinion.

AFFIRMED in part, VACATED in part and REMANDED.

---

6. This Court agrees that the district court should not be required to scour the guidelines under unrelated criminal statutes to decide the extent of the departure. However, in the present case, notice that the district judge intended to depart

because Landry involved a minor in drug trafficking would have been helpful; perhaps Landry could have called the district judge's attention to the guideline under the separate offense, 21 U.S.C. § 845b.