**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 94-30398
Summary Calendar

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

HEATH SINGLETON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
(March 22, 1995)

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Heath A. Singleton pleaded guilty to a three-count indictment charging him with conspiracy to commit carjacking, carjacking, and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 371, 2119 and 924(c), respectively. He now appeals both the five year consecutive sentence he received under § 924(c) and the life sentence he received on the carjacking count. We affirm.

I.

On November 15, 1992, Heath Singleton, his brother, his girlfriend, and Douglas J. Aleman conspired to steal a car and use

it to commit other robberies.[1]  The four conspirators found William Mullers sitting in his car in a parking lot and chose him as their victim.  Shortly after Aleman hijacked Mullers at gunpoint, Singleton joined Aleman in Mullers' vehicle.  They drove to a bank and forced Mullers to withdraw money from an automatic teller machine.  Aleman urinated on Mullers while he made the cash withdrawal.  Singleton and Aleman forced Mullers back into his car and they drove off, leaving the other two conspirators behind. Aleman and Singleton drove to the Pumpkin Center exit off Interstate 12, where they forced Mullers from the car to an area near the shoulder of the exit ramp.  Aleman again urinated on Mullers and shot him three times in the back of the head.  Aleman continued to pull the trigger until the gun was empty.  Using another gun, Singleton then shot Mullers in the back.  Aleman took Singleton's gun and continued to shoot Mullers until the gun was empty.  Mullers prayed aloud until he slipped into unconsciousness. Singleton and Aleman left Mullers lying in a ditch off the exit ramp, where he was later found, dead.

Singleton entered his guilty pleas in April 1994.  During the plea hearing, the district court called to Singleton's attention that the statutory maximum penalty on the carjacking count was life imprisonment.  The court then explicitly warned Singleton that the court was strongly inclined to impose that sentence.  Singleton

---

[1]Although the facts of Singleton's offense are already set out in his prior appeal, **United States v. Singleton**, 16 F.3d 1419 (5th Cir. 1994), we include an abbreviated version here because it is necessary to the issues addressed below.

informed the court that he understood this possibility.

The presentence investigative report (PSR) identified Singleton's base offense level for the carjacking and conspiracy counts as twenty. U.S.S.G. §§ 2B3.1 and 2X1.1(a). The PSR suggested a 7-point upward adjustment for discharge of a firearam, § 2B3.1(b)(2)(A), a 4-point upward adjustment for permanent or life threatening injury, § 2B3.1(b)(3)(C), a 4-point upward adjustment for abduction of the victim, § 2B3.1(b)(4)(A), and a 3-point downward adjustment for acceptance of responsibility, § 3E1.1. The PSR assigned a criminal history category of III. After adjusting the sentencing range downward 60 months under § 2K2.4, the PSR arrived at a final guideline range of 108-150 months, to be followed by a mandatory five year consecutive sentence on the firearms count.

The PSR recommended that the sentencing court depart from the carjacking guideline range because it did not take into consideration the killing of Mullers. The PSR suggested that the nature of the offense justified using the statutory maximum sentence and the corresponding base offense level, 43. The PSR again reduced for acceptance of responsibility,[2] leaving Singleton with an offense level of 40 and a sentencing range of 360 months to life. Because of his youth, mental state and acceptance of responsibility, the PSR suggested that the court sentence Singleton at the lower end of that range. Singleton did not make any

_____

[2]This reduction belies Singleton's argument that his life sentence is inconsistent with a reduction for acceptance of responsibility.

3

objections to the PSR.

One week before the sentencing hearing, the government filed a motion urging the district court to depart upward, arguing that the guidelines allowed a departure for the death of Mullers, § 5K2.1, and for the unusually heinous, cruel or degrading nature of the crime, § 5K2.8. Singleton did not oppose this motion.

At the sentencing hearing in June 1994, the district court informed Singleton that it did indeed propose to depart upward and invited Singleton's attorney to dispute this departure. The court explicitly asked whether Singleton had been given adequate notice to have an opportunity to be heard on the departure. Singleton's attorney told the court that she had adequate notice and said nothing about the propriety of an upward departure.

The court sentenced Singleton to life imprisonment on the carjacking court, five concurrent years on the conspiracy count and five consecutive years on the firearms count. The court explained that it was departing upward because the carjacking guideline did not take into account the murder of the victim or the especially heinous circumstances of the crime. The court stated that the comparable punishment in a state court system would be execution or life imprisonment.

## II.

For a number of reasons, Singleton complains that the district court improperly departed. While it is not entirely clear, it appears that Singleton contends both that the departure itself was an error and that the extent of the departure was unreasonable.

4

A district court may depart upward if it finds that there is an aggravating circumstance that was not adequately taken into consideration by the guidelines. 18 U.S.C. § 3553(b); **United States v. Ashburn**, 38 F.3d 803, 807 (5th Cir. 1994) (en banc), **petition for cert. filed**, No. 94-8084 (U.S. Feb. 13, 1995). We will affirm an upward departure from the guidelines if the district court provides acceptable reasons for its departure and the departure is reasonable. **Id.**

Ordinarily, we review the district court's decision to depart upward for abuse of discretion. **Id.** However, because Singleton did not object to the departure, we review only for plain error. Under this standard, we will correct an error only when (1) the error is clear or obvious under current law; and (2) the error affects the defendant's substantial rights. **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), **cert. denied**, No. 94-7792, 1995 WL 36679 (U.S. Feb 27, 1995) (citing **United States v. Olano**, ___ U.S. ___ , 113 S. Ct. 1770, 1777-79, 123 L. Ed. 2d 508 (1993)). If these requirements are met, this Court will only exercise its discretion to grant relief if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. **Id.** at 164.

### A. Propriety of departure

Singleton first argues that the district court erred in finding that his guideline range did not take into account Mullers' murder. Singleton contends that the upward adjustments to his original offense level were based on the dangerousness of his

5

conduct, making a further departure inappropriate. This contention is spurious. The adjustments for discharging a firearm and abducting the victim in no way contemplate an intentional killing. Additionally, this Court has previously held that the enhancement for risk of serious bodily injury does not preclude a sentencing court from departing upward for the death of the victim. **United States v. Billingsley**, 978 F.2d 861, 865-66 (5th Cir. 1992), **cert. denied**, 113 S. Ct. 1661 (1993).

Singleton also claims that he did not deserve the upward departure for especially heinous, cruel or degrading conduct. Singleton contends that the fact that Mullers prayed during his ordeal is of no moment and that "[a]lthough Mr. Aleman may have been deserving, Mr. Singleton did nothing to warrant this departure," apparently referring to the fact that Singleton himself did not urinate on Mullers but merely stood by as Aleman did. However, the district court did not err by including these occurrences in its decision that the circumstances of the crime were especially cruel or degrading. **See United States v. Lara**, 975 F.2d 1120, 1126-27 (5th Cir. 1992) (although defendant's partner was the one who actually fired the weapon, no error for court to consider this conduct grounds to depart upward for discharge of a firearm). Given the circumstances of this crime, the court's decision to depart upward for the heinous circumstances of the crime was not error.

B. Reasonableness of departure

Singleton complains that the district court did not give

6

reasons for the extent of its departure. Singleton recognizes that the Fifth Circuit does not usually require a sentencing court to explain the extent of a departure, **United States v. Moore**, 997 F.2d 30, 36 & n.10 (5th Cir.), **cert. denied**, 114 S.Ct. 647 (1993), but he argues that the court in **United States v. Landry**, 903 F.2d 334 (5th Cir. 1990) did require such an explanation. However, in **Landry** we held that the district court erred by not explaining why it chose to depart <u>above</u> the maximum guideline sentence the defendant could have received had he been convicted of the aggravating conduct. **Id.** at 340-41. In contrast, Singleton's life sentence is within the sentencing guideline range for murder. § 2A1.1. For this reason, it is not at all clear that Singleton's sentencing court was obligated to explain the degree of its departure. Additionally, even if the preferred course would be to explain exceptionally large departures, we are satisfied that the court gave adequate reasons. The court thoroughly explained why it believed that this crime was one of the worst it had ever seen. We doubt that it need have done more.

Singleton next maintains that the district court departed on the basis that he had murdered Mullers without sufficiently considering his mental state. Singleton points to § 5K2.1, which states that:

> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning and preparation . . . The extent of the increase should depend on the dangerousness of the defendant's conduct [and] the extent to which death or serious injury was intended or knowingly risked . . .

7

Singleton argues that the court did not consider his assertions that he accompanied Aleman during the carjacking in order to prevent harm to Mullers, that he thought Mullers would not be shot, that he obeyed Aleman's order to shoot Mullers because he was afraid that otherwise Aleman would shoot him, and that there is no proof that his shot actually hit Mullers.

However, the district court clearly did consider Singleton's state of mind. At sentencing, the court stated that Singleton had passed up opportunities to withdraw from the crime, that he made the decision to get into the car with Aleman, that he shot the victim, that he stood by and watched Aleman shoot him, and that he "must have realized [what] was going to be the ultimate end to all of this." Given its emphasis on these findings, the court was obviously convinced that Singleton was sufficiently culpable to sentence him at the statutory maximum. The fact that the court did not utter the phrase "state of mind" does not mean that the court did not give the consideration required by § 5K2.1.

To the extent that Singleton means to disagree with the district court's implicit factual conclusion that Singleton had the requisite mental state to have committed murder, rather than a lesser degree of homicide, we also find no error. The court's findings are firmly based on facts in the uncontested PSR and the Factual Basis that Singleton signed in concert with his guilty plea. These findings are not plainly erroneous.

Singleton maintains that the extent of the departure was

8

unwarranted for several additional reasons.[3]   We have recognized that:

> [r]easonableness of length of departure is quintessentially a judgment call.  District courts are in the front lines [and] the dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record.  Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case.  We will not lightly disturb . . . decisions implicating degrees of departure.

**Lara**, 975 F.2d at 1125 (internal citation omitted).   Even when a defendant contemporaneously objects, this Court gives a great degree of deference to an upward departure.  **United States v. Lee**, 989 F.2d 180, 187 n.7 (5th Cir. 1993).  Here, the district court's departure is within the statutory maximum sentence for carjacking involving the death of the victim.  18 U.S.C. § 2119(3) (statutory maximum is life).   The court gave two months' notice that it intended to depart upward to the statutory maximum and invited Singleton's attorney to dispute the departure at sentencing.  **Cf. Landry**, 334 F.2d at 341 n.6 (absence of notice contributed to holding departure unreasonable, because defendant had no opportunity to offer guidance on extent of departure).  The court's sentence, though tough, was not unfair given the particularly

---

[3]Singleton particularly emphasizes that his brother and his girlfriend received much lesser sentences.  However, Singleton fails to take into account that neither his brother nor his girlfriend were present during the killing of Mullers.  Thus, it is particularly inappropriate to gauge the reasonableness of his sentence by their sentences.

Singleton also argues that because his plea agreement provided that he would plead guilty to a state charge of manslaughter and the maximum state sentence for manslaughter is less than life, the court violated his plea agreement by sentencing him to life.  This argument is meritless.

egregious facts of this case and was consistent with 5K2.1's direction that "the extent of the increase should depend on the dangerousness of the defendant's conduct [and] the extent to which death or serious bodily injury was intended or knowingly risked." Given these circumstances, Singleton has certainly not shown that the court committed plain error in arriving at his sentence.

III.

Singleton also argues that the Fifth Amendment double jeopardy clause prohibits a conviction and consecutive 60-month sentence for the use of a firearm (§ 924(c)) when the underlying offense is carjacking (§ 2119). However, as Singleton acknowledges, this Court already carefully decided this issue against him in his earlier appeal. **Singleton**, 16 F.3d at 1429. Singleton argues that the Court's double jeopardy analysis was inconsistent with **United States v. Dixon**, ___ U.S. ___, 113 S. Ct. 2849 (1993). However, because our earlier decision took **Dixon** into account, this point was at least implicitly resolved adversely to Singleton once before. 16 F.3d at 1422 n.10. Under the law of the case doctrine, we will not revisit this issue. **Conway v. Chemical Leaman Tank Lines, Inc.**, 644 F.2d 1059 (5th Cir. 1981).

Singleton repeatedly asserts that this issue is deserving of reconsideration by the Court sitting en banc. However, if Singleton wishes en banc rehearing, he must follow the requirements set out in 5th Cir. R. 35.

For the reasons discussed above, Singleton's conviction and sentence are AFFIRMED.

10