# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-51131
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL LEON GORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

July 10, 2002

Before JONES, SMITH, and
EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Michael Gore appeals his sentence of life imprisonment for second degree murder in violation of 18 U.S.C. § 1111 (murder on a government reservation). Finding no reversible error, we affirm.

I.

Darrian Taylor was the three-year-old son of Sarah Dirck, who was on active military duty stationed at Fort Hood, Texas. Gore and Dirck were engaged to be married and were living together at the base in Fort Hood, but Gore was not Taylor's biological father. In late April 2001, Dirck left Fort Hood for military training and left Taylor in Gore's care, giving Gore a power of attorney, medical insurance information, access to her bank account, and the keys to her house and car.

Ten days later, on returning to Fort Hood for a one-day respite from training, Dirck noticed bruising around Taylor's eyes and a change in his mood. Gore explained that Taylor had slipped in the shower but did not need hospitalization. That night, Dirck returned to her training site. Ten days later, Gore turned himself in to police regarding the events of the previous twenty days.

Gore admitted to disciplining Taylor with a belt or by "popping" him in the chest. Finally, Gore reprimanded Taylor for "acting up" by hitting him in the chest so hard he defecated on himself. Taylor also experienced problems breathing after this blow to the chest and was unable to get up off the floor. Gore then put Taylor to bed; when he checked on him a few hours later, he was unresponsive. His eyes were open but unblinking, and he had coughed up some red mucus. Gore tried to get a response out of Taylor but was unsuccessful. Gore also noticed Taylor was not breathing, but did not take him to the hospital for fear of getting himself or Dirck in trouble. Finally, Gore fled and twice tried to commit suicide.

Gore pleaded guilty of second-degree murder and was informed that the maximum penalty was life in prison. He waived his right to appeal with the exception of an upward departure from the guideline range. The presentence report ("PSR") mentioned the possibility of an upward departure for extreme conduct. The district court did depart upward, imposing a life sentence (a seven-level upward departure from the guideline range).

II.

Ordinarily, our review of a sentence is for abuse of discretion, *Koon v. United States*, 518 U.S. 81, 100 (1996), but because Gore did not object in the district court to any of the errors he raises on appeal, our review is only for plain error, FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725 (1993). The plain error test has four prongs: (1) error (2) that is plain, and (3) affects substantial rights, (4) where a failure to recognize the error would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id*. at 732 (quoting *United States v. Young*, 470 U.S. 1 (1985)).

III.

Gore's primary legal contention is that the district court failed to abide by the articulation requirement of 18 U.S.C. § 3553(c), obliging a district court to "state in open court" the reason for the departure from the sentencing guideline. 18 U.S.C. § 3553(c). Although the court failed to explain its departure in open court, it later offered a written explanation following the recommendation in the PSR.

This court has yet to address the articulation requirement of § 3553(c)(2) in the plain error context.[1] The text of the statute ("in open court") leaves no doubt that although it did issue written reasons, the district court committed error that is plain by failing orally to explain the reasons for departure. Whether this error affected Gore's substantial rights is a harder question, one we ultimately resolve against him.

We draw support for this conclusion from four sources. First, our own jurisprudence regarding a cousin of § 3553(c)(2)'s articulation requirement suggests there is no plain error in Gore's case. Section 3553(c)'s articulation requirement also applies to a district court's decision whether to impose a consecutive or con-

---

[1] Section 3553(c)(2) applies the articulation requirement to departures from the guidelines.

2

current sentence. *See, e.g.*, *United States v. Londono*, 285 F.3d 348, 356 (5th Cir. 2002). We repeatedly have held that the failure to articulate the reasoning behind this decision in open court is not plain error.[2] By extension, the failure to follow § 3553(c) in justifying a departure does not *ipso facto* equal plain error.

Second, the Ninth Circuit, in *dictum*, has explained that there is no plain error where a district court fails to articulate, in open court, the reasons for departure. In *United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999), the district court made no effort to explain the departure in open court but did engage counsel in a colloquy that implicitly indicated the court's reasoning. The court of appeals concluded that a remand to comply with the technical dictates of § 3553 would be a "meaningless formality." *Id*. Although there was no such colloquy in Gore's case, the written statement of reasons would render remand a meaningless formality.

Third, the Eighth Circuit has decided that a district court's adoption of the PSR is sufficient to avoid plain error where that court has failed to follow the "open court" provision of § 3553.[3] If the defendant does not object and there is evidence to sustain the enhancement, the error is not reversible under the plain error standard. *Id*.

Finally, Gore cannot show plain error because the ultimate goal of § 3553 is to permit effective appellate review of sentencing.[4] The First Circuit has explicitly relied on a district court's reference to a PSR as an indicator of sufficient specificity to allow appellate review. *United States v. Cruz*, 981 F.2d 613, 617-18 (1st Cir. 1992). Here, the actions of the district court are such that we can effectively review the basis of the decision to depart.

These authorities teach that the key aim of the articulation requirement is satisfied if an appeals court can review the reason for the departure. Gore, accordingly, cannot show plain error, because the written statement of reasons points to the PSR, which in turn directs our attention to a U.S.S.G. § 5K2.8 departure based on the extreme cruelty of Gore's acts. This reference is sufficient to allow meaningful appellate review.

IV.

Gore challenges his sentence as an unreasonable departure from the guideline maximum. Citing his youth (twenty when the crime was committed), Gore notes that the life sentence more than doubles (assuming normal

---

[2] *United States v. Gonzalez*, 250 F.3d 923, 931 (5th Cir. 2001)*; United States v. Izaguirre-Losoya*, 219 F.3d 437, 441-42 (5th Cir. 2000), *cert. denied*, 531 U.S. 1097 (2001)*.

[3] *United States v. Evans*, 272 F.3d 1069, 1089 (8th Cir. 2001), *cert. denied*, 122 S. Ct. 1638 (2002), *and cert. denied*, ___ S. Ct. ___, 2002 U.S. LEXIS 3503 (May 13, 2002), *and cert. denied*, ___ S. Ct. ___ , 2002 U.S. LEXIS 3737 (May 20, 2002).

[4] *See, e.g.*, *United States v. DeMartino*, 112 F.3d 75, 81 (2d Cir. 1997) (emphasizing the need for an explanation of the departure sufficient to permit "meaningful appellate review"); *United States v. Loy*, 191 F.3d 360, 371 (3d Cir. 1999) (stating that the reasons must be such that "appellate review does not 'flounder in the zone of speculation'") (quoting *United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1997)); *United States v. Slater*, 971 F.2d 626, 633 (10th Cir. 1992) (same); *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (explaining that reasoning must "permit an informed appellate review").

life expectancy) the maximum guideline sentence he was eligible for without departure.[5] Our review of the reasonableness of a sentence departure must take account of the "amount and extent of the departure in light of the grounds for departing." *Williams v. United States*, 503 U.S. 193, 203 (1992). This reasonableness review must be filtered through two important precedents of this circuit.

First, we ordinarily do not require a district court to explain the *amount*, but only the *fact*, of the departure. *United States v. Huddleston*, 929 F.2d 1030 (5th Cir. 1991). Second, we must pay due respect to a trial court's greater intimacy with the case. Because our familiarity is limited by having contact only with the documents, we are "reluctant to tread with too heavy a step upon the district court's discretion." *United States v. Lara*, 975 F.2d 1120, 1126 (5th Cir. 1992).

The mere multiplication of Gore's sentence does not suggest any error in the departure. *United States v. Roberson*, 872 F.2d 597, 606 n.7 (5th Cir. 1989) (approving a multiple of 3.5 and noting multiples of 4, 5, and 3); *Lara*, 975 F.2d at 1126 (upholding a multiple of 7). Nor does the justification offered by the district court fail to support the reasonableness of the departure under plain error review.

In *United States v. Singleton*, 49 F.3d 129 (5th Cir. 1995) (opinion on petition for rehearing), we upheld a departure premised on the cruelty and brutality of a carjacking resulting in murder where the defendant may not have

fired the fatal shots. Recognizing that the sentence was "tough," we declined to find plain error where the district court based the departure on the brutality of the act. *Id.* at 134.[6]

The coroner's report detailed a recurring and brutal form of abuse that ultimately resulted in Taylor's death. The district court plausibly could conclude from this information that this second-degree homicide was especially heinous and cruel when compared to other second-degree murders. We find no plain error.

V.

Gore contends that the district court impermissibly double-counted conduct in calculating the initial guideline range and the upward departure. Without citation to authority, Gore notes that the PSR alluded to conduct that was also counted toward the initial guideline range in recommending an upward departure. Nevertheless, the court referenced only that part of the PSR that recommended departure based on the extreme nature of the conduct. This was not plain error.

---

[5] The maximum Gore was eligible for under the guidelines was 210 months. Using a life expectancy of 70, he is now facing a sentence of nearly 600 months.

---

[6] *Singleton* involved a departure more severe than in this caseSSto life from a guideline range of 108-120 months. *Id.* at 131. *See also United States v. Loud Hawk*, 245 F.3d 667 (8th Cir. 2001) (ten-level upward departure based on extreme conduct in connection with second-degree murder); *United States v. Roston*, 168 F.3d 377 (9th Cir. 1999) (seven-level departure for extreme conduct in connection with second-degree murder).

## VI.

Gore challenges the method used to calculate the new sentence.[7] Gore's argument boils down to a challenge to the propriety of allowing the relatives of the victimSSTaylorSSto testify at the sentencing hearing. Gore relies on 18 U.S.C. § 3553(b), which reads, in relevant part,

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b). Gore reads this passage to bar consideration of factors not included in the Guidelines Manual. By extension, Gore argues that the victim testimony used at his sentencing hearing contravenes this statutory command.

---

[7] Our decisions in *United States v. Lambert*, 984 F.2d 658 (5th Cir. 1993) (en banc), and *United States v. Ashburn*, 38 F.3d 803 (5th Cir. 1994) (en banc), do not suggest reversal. These cases dealt only with the proper method of upwardly departing on the criminal history axis, not the offense level axis of the guideline table. Although we express no opinion on this matter, we note that our cases on upward departure on this axis do not involve the more detailed methodology of the criminal history cases. *See, e.g.*, *Singleton*; *United States v. Hawkins*, 87 F.3d 722 (5th Cir. 1996).

Gore is wrong. The purpose of the above-quoted passage is to allow a district court to consider those factors the Sentencing Commission could not include in its generic punishment scheme precisely because that scheme is intended to be generic. This passage specifically allows the sentencing court to consider factors that, by their very nature, are not reducible to the generalities with which the bulk of the guidelines manual concerns itself. *See* United States Sentencing Commission, *Guidelines Manual*, § 5K2.0 (Nov. 2000).

Gore's specific argument also lacks merit. The type of testimony heard at his sentencing hearing is explicitly authorized by the rules of criminal procedure. FED. R. CRIM. P.32-(c)(3)(E), (f)(1)(B). There was no error, let alone plain error, in the decision to allow victim testimony.

## VII.

Gore challenges his sentence on the ground that the upward departure implies that the plea to second-degree murder did not adequately reflect the severity of the act and should not have been approved. Gore's argument is belied by the statutory maximum for second-degree murder. 18 U.S.C. § 1111(b). If a life sentence for a conviction for second-degree murder implied the plea should not be approved, the statutory maximum would be meaningless. The existing maximum reflects a legislative judgment that some second-degree murders warrant life imprisonment.

AFFIRMED.