UNITED STATES of America,
Plaintiff–Appellee,

v.

Paibool WETWATTANA, Defendant–
Appellant.

No. 95–3316.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1996.

Decided Aug. 22, 1996.

Barry Rand Elden, Chief of Appeals, Mark Filip (argued), Office of the U.S. Attorney, Criminal Appellate Division, Chicaco, IL, for Plaintiff-Appellee.

Robert A. Korenkiewicz (argued), Chicago, IL, Joseph R. Lopez, Chicago, IL, for Defendant-Appellant.

Before BAUER, CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Paibool Wetwattana pled guilty to conspiring to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. The district court sentenced Wetwattana to 84 months of imprisonment to be followed by 48 months of supervised release. Wetwattana appeals the district court's enhancement of his sentence for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) and the court's refusal to reduce his sentence for timely acceptance of responsibility under U.S.S.G. § 3E1.1(b). We affirm.

## I.

In February of 1993, Wetwattana agreed with Siri Lanpouthakoun, his close friend and business associate, to sell approximately one pound of heroin. Their plan called for Wetwattana to obtain the pound of heroin from sources in Thailand for $60,000, for Lanpouthakoun to find a buyer, and for the two co-conspirators to split the profits of the illegal enterprise. Lanpouthakoun soon found a "buyer," who in fact was an undercover law enforcement officer, and agreed to sell the pound of heroin to the officer for $90,000.

On June 3, 1993, Wetwattana delivered a pound of heroin, along with a small sample of the drug, to Lanpouthakoun. Later that day, Lanpouthakoun brought the sample to the undercover officer, who agreed with Lanpouthakoun to consummate the drug transaction the next day in a room at the La Quinta Motel in Hoffman Estates, Illinois. On June 4, 1993, before the meeting time at the motel, Wetwattana visited Lanpouthakoun's home to discuss the particulars of the drug deal. Lanpouthakoun revealed that he was nervous about the deal and asked Wetwattana to accompany him to the motel. Wetwattana agreed to drive in a separate car to the motel and told Lanpouthakoun that he could be reached during the transaction by pressing a button on a cellular phone that he had given Lanpouthakoun a few days before. During their meeting, Wetwattana also informed Lanpouthakoun that he kept a gun in his car.

Lanpouthakoun drove to the motel, and Wetwattana followed in his own car. The two vehicles separated upon entering the parking lot of the motel. Lanpouthakoun parked behind the motel, grabbed a bag containing the pound of heroin, and was led by an undercover officer into a motel room. Meanwhile, Wetwattana parked his car in a Chili's Restaurant lot adjacent to the motel.

Wetwattana maintained surveillance from a space in the lot approximately 100 yards from the room in which the drug transaction was taking place and waited for Lanpouthakoun to bring him $80,000 in cash from the sale of the heroin.[1]

Yet Wetwattana would never realize any profits from the heroin sale. Once Lanpouthakoun exchanged the heroin for the cash and attempted to leave the motel room, he was immediately arrested by the undercover officers. Two officers then arrested Wetwattana, who had remained in his car with the engine running. At the time of his arrest, Wetwattana was sitting in the back seat of the vehicle next to what appeared to be a box of tissues. A subsequent search of the vehicle and the tissue box revealed that the box actually contained a loaded .45 caliber semi-automatic handgun. Customs agents also retrieved a cellular phone from inside the vehicle.

■■■ On June 30, 1993, Wetwattana was charged in a three-count indictment with: (1) conspiring to possess with intent to distribute approximately one pound of heroin, in violation of 21 U.S.C. § 846; (2) knowingly and intentionally distributing approximately one pound of heroin, in violation of 21 U.S.C. § 841(a)(1); and (3) using or carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Wetwattana originally pled not guilty to all three counts, but expressed an intention to plead guilty to the conspiracy count on March 16, 1994, just nineteen days prior to the trial date on April 4th. In the meantime, the government had begun to pretry Lanpouthakoun, who had agreed to testify against Wetwattana. The government had also prepared a *Santiago* proffer[2] in connection with Lanpouthakoun's expected testimony, and had responded to a defense motion to suppress statements made by Wetwattana after

1. Although the parties to the transaction agreed that the heroin would be sold for $90,000, Lanpouthakoun planned on giving $10,000 to the individual who had introduced him to the undercover officer.

2. Under *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978), the statements of unindicted co-conspirators are admissible as non-hearsay if the government proves prior to trial that a conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the statements were made during the course and in furtherance of the conspiracy. The admissibility of the coconspirator statements is subject to the trial court's "later determination that the government proved these foundational elements at trial." *United States v. Blanding,* 53 F.3d 773, 777 (7th Cir.1995).

his arrest. On March 30, 1994, only five days before trial, the defendant entered a plea of guilty to the conspiracy count, pursuant to a written plea agreement.

At sentencing the district court heard the testimony of several witnesses and considered defendant's arguments regarding the application of various provisions of the Sentencing Guidelines. The court determined that Wetwattana had possessed a handgun during the conspiracy and therefore enhanced his base offense level by two levels, pursuant to U.S.S.G. § 2D1.1(b)(1). With respect to this enhancement, the court found that the handgun in the tissue box was within Wetwattana's reach and that his possession of the gun was related to the drug conspiracy. The district court also determined that Wetwattana was entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The court, however, denied Wetwattana an additional one-level reduction under U.S.S.G. § 3E1.1(b)(2), which is available for a defendant who *timely* notifies authorities of an intention to enter a guilty plea.

## II.

Wetwattana first asserts that the district court erred in applying a two-level enhancement for possession of a dangerous weapon pursuant to Sentencing Guideline § 2D1.1(b)(1). The government must prove that this enhancement is warranted by a preponderance of the evidence. *United States v. Vold*, 66 F.3d 915, 920 (7th Cir. 1995); *United States v. Mumford*, 25 F.3d 461, 465 (7th Cir.1994). We review a district court's factual determination to enhance a sentence under § 2D1.1(b)(1) for clear error only. See, *e.g., United States v. Berchiolly*, 67 F.3d 634, 640 (7th Cir.1995); *United States v. Covarrubias*, 65 F.3d 1362, 1370 (7th Cir.1995).

Sentencing Guideline § 2D1.1(b)(1) provides for a two-level enhancement of a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed." Application Note Three to Guideline § 2D1.1 states that "[t]he enhancement for weapon possession reflects the increased danger for violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." The government, therefore, is not required to demonstrate a connection between the weapon and the offense. See, *e.g., United States v. Montgomery*, 14 F.3d 1189, 1199 (7th Cir.1994); *United States v. Cantero*, 995 F.2d 1407, 1410 (7th Cir.1993). Rather, the government need only prove that the weapon was possessed during the offense of conviction or during related "relevant conduct," as defined in U.S.S.G. § 1B1.3. See, *e.g., United States v. Anderson*, 61 F.3d 1290, 1303–04 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 543, 133 L.Ed. 2d 446 (1995); *Mumford,* 25 F.3d at 468–69.[3]

Wetwattana confusingly maintains that he did not actually possess the handgun contained in the sealed tissue box, arguing that the gun was inaccessible to him. We note, however, that § 2D1.1(b)(1) does not require actual possession of the weapon by the defendant. *Covarrubias,* 65 F.3d at 1371; *Cantero,* 995 F.2d at 1410. Constructive possession of the firearm is also "sufficient to trigger the enhancement." *Covarrubias,* 65 F.3d at 1371. Possession of an object, whether actual or constructive, exists when a person exercises control over the object. See *United States v. Garrett,* 903 F.2d 1105, 1110 (7th Cir.), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227

---

**3.** Prior to the amendment of § 2D1.1(b)(1) in November of 1991, the section authorized a two-level enhancement where the weapon "was possessed during commission of the offense." *See* U.S.S.G. § 2D1.1(b)(1) (1988). We interpreted this section as requiring that the defendant possessed the weapon during the offense of conviction. *See, e.g., United States v. Rodriguez–Nuez,* 919 F.2d 461, 467 (7th Cir.1990). In *Mumford,* we held that the 1991 amendment of § 2D1.1

expanded the applicability of the weapons enhancement by eliminating the requirement that the defendant possess the weapon during the offense of conviction, thereby bringing the rules of relevant conduct into play. 25 F.3d at 469; *see also United States v. Baldwin,* 5 F.3d 241, 242 (7th Cir.1993) (finding that our pre-amendment caselaw "implicitly held that the rules of relevant conduct do not apply to the dangerous weapons enhancement").

(1990).[4] The evidence in this case clearly shows that Wetwattana possessed a firearm at the time of his arrest. Wetwattana admits that he owned the handgun and that he stored the handgun in the tissue box in his car. Moreover, the arresting agents testified at sentencing that Wetwattana was seated in the rear seat of his car next to the tissue box when he was apprehended. Thus, rather than showing that the handgun was inaccessible to Wetwattana, the record supports the district court's conclusion that the handgun was within his reach and control.[5]

■ Wetwattana further argues that the district court erred in enhancing his sentence under § 2D1.1(b)(1) because he did not possess the handgun in proximity to the drug transaction, citing our decisions in *United States v. Rodriguez–Nuez*, 919 F.2d 461 (7th Cir.1990), and *United States v. Edwards*, 940 F.2d 1061 (7th Cir.1991). In both of those cases, a defendant was convicted of distributing drugs and a weapon was seized at a location miles away from the site of the specific drug transaction charged in the indictment. This court held that, since § 2D1.1(b)(1) required the defendant to possess the firearm during the offense of conviction, the weapons enhancement could not ap-

ply in such situations. *Edwards*, 940 F.2d at 1064; *Rodriguez–Nuez*, 919 F.2d at 466–67.[6]

We need not examine the issue of whether Wetwattana possessed the handgun in sufficient proximity to the drug transaction. Unlike the defendants in *Rodriguez–Nuez* and *Edwards*, Wetwattana was convicted of the crime of *conspiracy*. Thus the enhancement under § 2D1.1(b)(1) is warranted if the weapon was possessed during the course of the conspiracy. *See, e.g., Cantero*, 995 F.2d at 1412 (finding *Rodriguez–Nuez* and *Edwards* inapplicable in conspiracy cases); *United States v. Durrive*, 902 F.2d 1221, 1232 (7th Cir.1990). The record before us conclusively demonstrates that Wetwattana possessed the handgun during the course of the heroin conspiracy. Wetwattana accompanied Lanpouthakoun to the site of the drug transaction and waited in a nearby parking lot for his co-conspirator to complete the deal. Wetwattana's presence in the parking lot was not mere happenstance. Rather, Wetwattana drove to the scene of his arrest in furtherance of the conspiracy to distribute the pound of heroin.[7]

Wetwattana nonetheless seeks the benefit of Application Note Three to § 2D1.1, which states that the weapons enhancement "should be applied if the weapon was present, unless

4. The distinction between actual and constructive possession is based on whether an object is in the *immediate* control of a person. Thus, we have held that:

> Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.

*Garrett*, 903 F.2d at 1110. Because we conclude that the facts of this case demonstrate that the firearm was in the control of Wetwattana, we need not reach the issue of whether his possession of the firearm is properly considered actual or constructive.

5. In asserting that the handgun was inaccessible, Wetwattana focuses on the fact that the gun was contained in a *sealed* tissue box. He presented no evidence, however, that he was unable to open the box and thereby immediately access the gun.

6. Again we note that the Sentencing Commission has since amended § 2D1.1(b)(1) and eliminated the requirement that the weapon be possessed

during the offense of conviction. *See Mumford*, 25 F.3d at 468–69. As it currently reads, the section authorizes an enhancement if the weapon was possessed either during the offense of conviction or during related relevant conduct. *See id.* Thus the current application of *Rodriguez–Nuez* and *Edwards* is limited to cases in which the weapon was not proximate to the location of the transaction for which the defendant was convicted or to the location of relevant conduct under U.S.S.G. § 1B1.3.

7. The parties dispute the exact purpose of Wetwattana's presence in the parking lot of Chili's Restaurant. The government, citing Wetwattana's signed plea agreement, asserts that Wetwattana "maintained surveillance" of the drug transaction from his Range Rover. Wetwattana, in contrast, insists that he was present solely to collect the proceeds from the heroin sale. We believe that Wetwattana's contention is belied by his admission in the plea agreement. Moreover, even if Wetwattana was waiting for his co-conspirator merely to collect money, his presence would still be in furtherance of the conspiracy to distribute heroin.

it is clearly improbable that the weapon was connected to the offense." Wetwattana maintains that, because he was at the parking lot merely to obtain money from the drug sale, there is no evidence that he intended to or was poised to use the handgun located in his car.[8] From this premise, he reasons that it is clearly improbable that the handgun was connected to the drug conspiracy. We have recognized, however, that drug dealers often carry weapons to protect both themselves and large sums of cash exchanged for drugs. *See Mumford,* 25 F.3d at 469; *Cantero,* 995 F.2d at 1412; *United States v. Valencia,* 913 F.2d 378, 385 (7th Cir.1990). The handgun in the current case would have served to secure the proceeds from the heroin sale, thereby facilitating the specific transaction and the conspiracy between Lanpouthakoun and Wetwattana. Thus there was ample evidence from which the district court could conclude that the handgun was connected to the offense of conviction.

■ Moreover, there is no basis in the law for Wetwattana's bald assertion that the weapons enhancement cannot apply unless the defendant either intended to use or was poised to use the weapon. The weapons enhancement reflects the Sentencing Commission's general determination that the possession of weapons by drug traffickers increases the danger of violence. *See* U.S.S.G. § 2D1.1 note 3. There is no language in § 2D1.1(b)(1) requiring that the defendant use or intend to use the weapon, and we refuse to read this limitation into the provision. See, e.g., *United States v. Lagasse,* 87 F.3d 18, 22 (1st Cir.1996) (holding that government need not show weapon was used or intended to be used to commit offense); *United States v. Garcia,* 925 F.2d 170, 173 (7th Cir.1991) (finding no requirement under § 2D1.1(b)(1) that defendant use firearm). We therefore conclude that the district court did not commit clear error in finding that Wetwattana deserved a two-level enhancement under § 2D1.1(b)(1).

■ Wetwattana also challenges the district court's denial of the additional one-level reduction for timely acceptance of responsibility. Guideline § 3E1.1(b)(2) provides that a defendant, after receiving a two-level reduction for acceptance of responsibility, may in certain circumstances be entitled to an additional one-level reduction if he "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." The defendant must establish by a preponderance of the evidence that he is entitled to the one-level reduction under § 3E1.1(b)(2). *See, e.g., United States v. Francis,* 39 F.3d 803, 807 (7th Cir.1994); *United States v. Robinson,* 20 F.3d 270, 273 (7th Cir.1994). The district court's acceptance of responsibility determination is a factual finding, which we review for clear error. *United States v. Covarrubias,* 65 F.3d 1362, 1367 (7th Cir.1995); *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993); *see also* U.S.S.G. § 3E1.1 note 5 (acceptance of responsibility determination of sentencing judge should be given "great deference" on review).

■ Application Note Six to § 3E1.1 reveals that "[i]n general, the conduct qualifying for a decrease in offense level under [sec. 3E1.1(b)(2) ] will occur particularly early in the case." In this case, Wetwattana did not indicate an intention to plead guilty until March 16, 1994, more than eight months after his initial arraignment on June 8, 1993. His guilty plea was entered on March 30, 1994, only five days before his trial was scheduled to begin. Wetwattana correctly notes, however, that § 3E1.1(b)(2) defines timeliness in functional, rather than temporal, terms. *See United States v. Kimple,* 27 F.3d 1409, 1413 (9th Cir.1994) (equating timeliness with government's ability to avoid preparing for trial and court's ability to allocate its resources efficiently); *United States v. Tello,* 9 F.3d 1119, 1125 (5th Cir.1993) (same); *see also Francis,* 39 F.3d at 808 (holding guilty plea not timely unless it served purpose of conserving government and court resources); *but see United States*

---

8. For the purposes of our analysis, we accept Wetwattana's questionable explanation for his presence in the parking lot.

*v. McConaghy,* 23 F.3d 351, 353 (11th Cir. 1994) (finding that functional goals of § 3E1.1(b)(2) are not "precise lines in the sand" that necessarily determine whether plea was timely). Instead of focusing on the chronology of particular plea negotiations, § 3E1.1(b)(2) requires courts to examine the effect of a defendant's acceptance of responsibility on the expenditure of government and court resources. *See, e.g., Francis,* 39 F.3d at 808.

 The district court specifically found that Wetwattana had failed to show that his guilty plea had allowed the government to avoid preparing for trial. After reviewing the record, we must conclude that the district court's finding in this respect was not clearly erroneous. At the time Wetwattana first expressed his intention to plead guilty, the government had begun to pre-try Lanpouthakoun, who had agreed to cooperate with the government and undoubtedly would have been the principal witness in the trial. The government had also prepared a lengthy *Santiago* proffer in connection with Lanpouthakoun's expected testimony.[9] Wetwattana offers no plausible argument supporting his conclusion that the district court's decision to deny the one-level reduction was clearly erroneous.[10] Hence we see no error in the district court's determination that Wetwattana was not entitled to a one-level reduction under § 3E1.1(b)(2).

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

---

9. When the district court considered the timely acceptance of responsibility issue, the government did not specifically point to the *Santiago* proffer as evidence that it had prepared for trial. Wetwattana argues that we therefore cannot take notice of the existence of the *Santiago* proffer on appeal. However, we will not overturn a district court's determination of timeliness under § 3E1.1(b)(2) as long as the record supports its decision. *United States v. Sandles,* 80 F.3d 1145, 1150 (7th Cir.1996).

10. Wetwattana asserts that the delay in his plea was caused by his counsel's busy schedule and the disputed applicability of the weapons enhancement. Yet the date on which defense counsel learned of his client's intention to plead guilty

is irrelevant to the timeliness issue. *See United States v. McClain,* 30 F.3d 1172, 1174 (9th Cir.) (observing that § 3E1.1(b)(2) requires defendant to timely notify the "authorities"), *cert. denied,* —— U.S. ——, 115 S.Ct. 609, 130 L.Ed.2d 519 (1994). Furthermore, Wetwattana could have pled guilty and left the resolution of the dispute regarding the weapons enhancement to the district court (as he ultimately did). Thus the existence of the weapons enhancement dispute cannot justify the defendant's delayed guilty plea. *See Covarrubias,* 65 F.3d at 1367–68 (finding § 3E1.1(b)(2) reduction unwarranted because defendant failed to make conditional offer to plead guilty).