134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sean ANDERSON, Defendant-Appellant.
 No. 97-1774.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 21, 1997.
Decided Jan. 20, 1998.
 
 Before CUMMINGS, WOOD, and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Sean Anderson ("Anderson") was charged and convicted of a single count of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). On appeal, Anderson argues that the district court made numerous evidentiary errors and misapplied the sentencing guidelines. We affirm.
 
 I. Background
 
 2
 Around July, 1996 Jamie Walls ("Walls") contacted Anderson about transporting a shipment of marijuana. Because Walls had known Anderson since the seventh grade and Anderson had previously bought marijuana from him on several occasions, Walls asked Anderson to drive a shipment of marijuana from Fresno, California to Indiana. After obtaining a vehicle, a Ford Taurus loaded with marijuana, and a 38 caliber revolver from Wall's source, Anderson and Walls headed to Indiana. The handgun and the marijuana were stashed in a hidden compartment behind the rear seat and the trunk.
 
 
 3
 Around 6:00 p.m., on July 25, 1996, Anderson and Walls were passing through Springfield, Illinois, when Illinois State Police Special Agent Pat Murphy ("Agent Murphy") stopped their Taurus because it appeared to have a flat tire and for making a lane change without signaling. At the time of the arrest, Anderson was driving and Walls was seated in the passenger seat. After issuing a verbal warning and telling them they were free to go, Agent Murphy asked both Anderson and Walls if they would answer a few questions. During the questioning, Anderson and Walls indicated that they were from Fresno, California and that they were going to see relatives in New York. Agent Murphy asked if they would consent to a vehicle search. After receiving their consent, Agent Murphy inspected the Taurus, finding 25.3 grams of marijuana, marijuana cigarettes, and a marijuana pipe. Walls told Agent Murphy that the marijuana was his and was subsequently arrested.
 
 
 4
 At about 10:45 p.m. that same evening, after being processed and released at Sangamon County jail in Springfield, Anderson and Walls were stopped by Illinois State Police Master Sergeant Mike Snyders ("Snyders") for changing lanes without signaling on Interstate 55 (I-55), north of Springfield, near Williamsville, Illinois. Snyders stopped Anderson and Walls after he observed the Taurus they were driving make several lane changes without signaling. Anderson was again driving with Walls seated in the passenger seat. Snyders notified Anderson of the improper lane changes. Anderson responded that he had just been stopped for the same violation and that his signal lights did not work. Walls told Snyders that they had just left the Sangamon County jail and produced an evidence receipt for the marijuana that had been seized. After Snyders questioned Anderson about the ownership of the vehicle, Anderson produced the title and told him that he had recently purchased the Taurus. Snyders advised Anderson and Walls that they were free to leave and then asked if he could search behind the back seat of the vehicle. Anderson and Walls agreed. Pulling the seat back, Snyders noticed a latch that did not appear to be factory installed equipment. He asked if he could open the trunk and Anderson handed him the keys. Upon opening the trunk, Snyders discovered a hidden compartment between the trunk and the back seat. Inside this compartment, Snyders found ten packages of marijuana. Together the packages contained about 107 pounds of marijuana. Inside the compartment, Snyders also found a loaded .38 caliber handgun with the serial number filed off. Subsequently, Snyders arrested Anderson and Walls.
 
 
 5
 Walls pleaded guilty to an information charging him with possession of marijuana with the intent to distribute it. As part of Walls' plea agreement. the government did not charge Walls with possession of a weapon. Anderson's indictment charged him with a single count of possession of marijuana with the intent to distribute it in isolation of 21 U S.C. § 841(a)(1). Anderson pleaded not guilty. Prior to trial, Anderson moved to suppress the evidence seized from the Taurus Following an evidentiary hearing, the district court denied Anderson's motion to suppress the seized marijuana and handgun found in the car
 
 
 6
 At Anderson's trial, Walls testified that he had hired Anderson to drive him and the marijuana because he did not have a valid driver's license and because there was an arrest warrant out for him. Anderson stipulated to the fact that four of the seized packages contained marijuana after the Illinois State Police laboratory found them to contain a total of 16.9 kilograms, or 3 7.3 pounds, of marijuana. However, the remaining six bags were not tested and Anderson's counsel raised the claim that they might not contain marijuana. The district court granted the government's request to publish the ten packages to the jury, who were then allowed to compare the six untested packages with a package that had previously been stipulated to as containing marijuana.
 
 
 7
 Following a jury verdict of guilty, Anderson filed motions for judgment of acquittal or, in the alternative, for a new trial. After denying both motions, the district court sentenced Anderson to 38 months of imprisonment, to be followed by three years of supervised release The sentence reflected a two-level enhancement under U.S.S.G. § 2D1.1(b) for possession of a firearm and a two-level reduction under U.S.S.G. § 3B 1.2(b) because he was found a minor participant.
 
 II. Discussion
 
 8
 On appeal Anderson raises numerous objections to his conviction. His claims can be organized into three categories: (1) the court improperly admitted certain evidence; (2) there was insufficient evidence to convict; and (3) the court misapplied the sentencing guidelines. We discuss the claims of each of these categories in the order stated above.
 
 A. Evidentiary Objections
 
 9
 Anderson asserts that the district court erred in denying his motion to suppress and in several evidentiary rulings at trial. We review the district court's evidentiary rulings for abuse of discretion. However, many of Anderson's claims are neither developed nor supported by any authority. These claims are waived. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.), cert. denied, 502 U.S. 845 (1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citations omitted). Moreover, some of the arguments presented by Anderson were not raised before the district court and are thus forfeited, making them subject to a plain error standard of review. United States v. Olano, 507 U.S. 725, 731-35 (1993); United States v. Nobles, 69 F.3d 172, 183 (7th Cir.1995). We shall, nevertheless, first address the claims Anderson has either waived or forfeited before discussing the claims he has preserved.
 
 
 10
 In his brief, Anderson argues that the court "committed numerous evidentiary errors which denied the defendant a fair trial." These alleged errors include certain statements by Snyders on direct examination regarding his general experience in finding contraband, the nature of certain questions asked by the prosecution on cross-examination of the defendant and the admission of the marijuana and drug paraphernalia seized during the first stop. These arguments were neither developed nor supported by any authority. Thus, they are waived. See Berkowitz, 927 F 2d at 1384.
 
 
 11
 At trial, in response to defense counsel's cross-examination of Walls as to benefits he received or could receive for testifying against Anderson, the government requested that the district court take judicial notice of matters relating to the Sentencing Guidelines. Anderson argues, for the first time on appeal, that the district court improperly took judicial notice that if Walls had been charged with the offense of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), he would not have received a higher sentence. According to Anderson, this was improper because the district court could have imposed a consecutive sentence. Anderson argues that, although he forfeited his claim by failing to object below, the judicial notice constitutes plain error under Fed.R.Crim.P. 52(b). In support, Anderson states that the improper judicial notice "undercut his argument that Walls was a liar and was receiving great benefits as a result of his testimony for the failure of the government to prosecute on the gun charge in exchange for his plea." We review claims of evidentiary errors, not raised in the trial court, under a plain error standard. "Plain error must be of such a great magnitude that it probably changed the outcome of the trial." U.S. v. Douglas, 818 F.2d 1317, 1320 (7th Cir.1987). Under the sentencing guidelines, if Walls was convicted of possession of a firearm by a convicted felon pursuant to 18 U.S.C. § 922(g), he would have an offense level of 20 for sentencing purposes. See U.S.S.G. § 2K2.1(a)(4). Wall's conviction for possession of a controlled substance with the intent to distribute it, pursuant to 21 U.S.C. § 841(b)(1)(a), had a base offense level of 20 which, enhanced by two levels for possession of a firearm, resulted in an offense level of 22. See U.S.S.G. § 2D1.1(a)(3) and 2D1.1(b)(1). Thus, it was not error, let alone plain error, for the district court to take judicial notice of this correct statement of the law. We now examine the claims of evidentiary errors that Anderson has properly preserved.
 
 1. Suppression of Seized Evidence
 
 12
 Anderson claims that the district court erred in denying his motion to suppress evidence, marijuana and a loaded handgun, seized during a consensual search of the car he was driving. He claims that the reason articulated by the police, his failure to signal lane changes, was pretextual for impermissible motivations of the individual police officers involved. In particular, Anderson's brief states that "the testimony of the police officers was inherently improbable and that the stop was unconstitutional."
 
 
 13
 In his brief, Anderson only asserts that the first stop, when Anderson was pulled over for failing to signal and driving on a flat tire, was improper. However, this stop did not produce the seizure of evidence which he sought to prevent, rather, it was the later stop that evening which resulted in seizure of the evidence at issue. Moreover, Anderson makes no argument that the earlier, allegedly improper, stop is somehow connected to the later stop where the evidence he seeks to suppress was seized.
 
 
 14
 Anderson contends that there was no probable cause for the traffic stop. We will assume that Anderson also wishes to challenge the second stop. Although Anderson acknowledges that the Supreme Court, in Whren v. United States, 116 S Ct. 1769, 1774 (1996), forecloses an argument that the constitutional reasonableness of traffic stops depends on the actual motivation of the individual officers involved, he argues that "the testimony of the police officers was inherently improbable and that the stop was unconstitutional" We review the district court's findings of fact in suppression cases for clear error. United States v. Duguay, 93 F.3d 346, 349 (7th Cir.1996). The district court's ultimate finding of probable cause is reviewed de novo. Ornelas v. United States, 116 S.Ct. 1657, 1663 (1996).
 
 
 15
 Anderson concedes that he was driving without an operable turn signal at 10:45 p.m. the evening he was stopped. Illinois law requires all motor vehicles other than antique vehicles to "be equipped with an electrical turn signal device which shall indicate the intention of the driver to turn to the right or left in the form of flashing lights located at and showing to the front and rear of the vehicle on the side of the vehicle toward which the turn is to be made." 625 ILCS 5/12-208(b) (West 1993). Moreover, "[t]he electric turn signal device required in Section 12-208 of this Act must be used to indicate an intention to turn [or] change lanes...." 625 ILCS 5/11-804(d) (West 1993). We agree with the district court that when the arresting officer saw Anderson change lanes without signaling, he had probable cause to believe Anderson violated Illinois law.
 
 2. Prior Possession of Marijuana
 
 16
 Anderson argues that the district court erred in admitting evidence of his prior possession of marijuana under Fed.R.Evid. 404(b). On July 4, 1996, three weeks before Anderson's arrest in this case, Anderson was arrested in California for the possession of between one and two tablespoons of marijuana. At trial the government filed a motion in limine seeking to allow that evidence, claiming the evidence was admissible under Rule 404(b) to show that Walls trusted Anderson and to show that Anderson's prior experience with marijuana made it more likely that he could be trusted to keep secret illegal drug transactions. Anderson, on the other hand, argues that the sole purpose behind introducing this evidence was to establish that he had a propensity to deal in marijuana. Finding the evidence probative of issues other than Anderson's propensity to commit the instant offense, the district court granted the government's motion.
 
 Rule 404(b) provides:
 
 17
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 18
 Rule 403 further limits the admissibility of past "crimes, wrongs, or acts" stating that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." In United States v. Hernandez, 84 F.3d 931, 935 (7th Cir.1996), reading those two rules together, we adopted a four-part test for determining the admissibility of "other crimes" evidence:
 
 
 19
 First, the evidence must be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged. Second, the "other act" must be similar to the charged conduct and close enough in time to be relevant to the matter at issue. Third, the evidence must be sufficient to support a jury finding that the defendant committed the similar act. Finally, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.
 
 
 20
 Id. We agree with the district court judge's determination that the prior arrest was probative with respect to Anderson's knowledge of the controlled character of marijuana, the absence of mistake, and the existence of opportunity to commit the instant offense. The prior arrest was within a few weeks of the charged offense and the testimony of the arresting officer was sufficient to establish that Anderson committed the previous act. Thus, all four elements were met and the court properly admitted the evidence under Rule 404(b). Furthermore, the district court carefully instructed the jury as to the limited purpose of this evidence at the time the evidence was introduced and just prior to closing argument. Thus, we cannot say that the district court judge abused his discretion by allowing the introduction of the recent arrest for purposes other than to show Anderson's propensity to commit the instant offense.
 
 3. Constructive Possession Instruction
 
 21
 Anderson next argues that the district court erred in giving a constructive possession instruction. Specifically Anderson disputes the use of Government's Instruction 21 which states: "[p]ossession may be either actual or constructive, and it need not be exclusive but may be joint." In his brief, Anderson claims that the constructive possession instruction acted to confuse the jury because his "theory of defense was that he did not know that marijuana was contained in the automobile." On review, we will not overturn the use of a jury instruction if it fairly and adequately advises the jury of the law in this Circuit. U.S. v. Bruce, 109 F.3d 323, 327 (7th Cir.1997). Anderson's argument that the constructive possession instruction was improper is directly contradicted by our recent decision in United States v. Tirrell, 120 F.3d 670 (7th Cir.1997), where we upheld the use of a nearly identical instruction under similar circumstances. In Tirrell we stated:
 
 
 22
 This court recently explained in United States v. Kitchen, 57 F.3d 516 (7th Cir.1995), that "[p]ossession may be either actual or constructive" and that " '[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.' " Id. at 520 (quoting United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir.), cert. denied, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990)). In Mr. Tirrell's case, the wording of the court's instructions mirrored the language we set forth in Kitchen and Garrett.
 
 
 23
 We said further in Kitchen that "[c]onstructive possession may be either sole or joint." 57 F.3d at 521 (citing Garrett, 903 F.2d at 1110 (possession "need not be exclusive but may be joint")). In Kitchen we concluded that the fact that another defendant had access to the firearms at issue "fail[ed] to negate the inference that Kitchen did as well." Id. The district court in this case properly instructed the jury on joint possession in words that were practically verbatim to those we used in Kitchen and Garrett.
 
 
 24
 Id. Here, the instructions accurately stated the law of possession. Accordingly, the district court did not err in giving the constructive possession instruction.
 
 B. Sufficiency of the Evidence
 
 25
 Anderson argues that his conviction was not supported by sufficient evidence. Defendants challenging the sufficiency of the evidence at trial face a "nearly insurmountable hurdle." United States v. Moore, 115 F.3d 1348, 1363 (7th Cir.1997). After reviewing the evidence in a light most favorable to the prosecution, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Johnson, (7th Cir.1997). A verdict will be overturned "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Moore, 115 F.3d at 1363. After examining the record, we find more than ample evidence to support the jury's verdict.
 
 
 26
 In order to convict Anderson of possession of marijuana with the intent to distribute it, the jury must have found that the government proved the following elements beyond a reasonable doubt: (1) that Anderson knowingly possessed the marijuana; and (2) that Anderson intended to distribute the marijuana. 21 U.S.C. § 841(a)(1). The evidence at trial established that Anderson was driving the vehicle in which the marijuana was found. Walls testified that he hired Anderson to transport the marijuana. Walls also testified that he had sold marijuana to Anderson on several occasions in the past and that because of these prior transactions he trusted Anderson to transport the marijuana.
 
 
 27
 Anderson's entire argument is based on his claim that Walls' testimony is not worthy of belief. He claims that since the entire prosecution case relies on the testimony of Walls, Anderson could not have been found guilty beyond a reasonable doubt. However, as Anderson concedes, the weighing of evidence and assessment of credibility of witnesses is not within the province of the reviewing court. Furthermore, Anderson does not argue that if Walls' testimony is accepted as credible, no rational trier of fact could have found all of the essential elements of the offense. We have stated that we do not "reevaluate the credibility of testimony even if it is totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug dealing, paid government informant." United States v. Saulter, 60 F 3d 270, 275 (7th Cir.1995). We will not disturb the jury's verdict because there was sufficient evidence for a rational juror to have found Anderson guilty beyond a reasonable doubt.
 
 C. The Sentencing Guidelines
 
 28
 Anderson argues that the district court made three errors in calculating the base offense level under the Sentencing Guidelines. First, Anderson argues it was error to apply a two-level enhancement under U.S.S.G. § 2D1.1(b) for possession of a firearm. He also argues that the district court should have given him a four-level reduction under § 3B1.2(a) for being a minimal participant rather than the two-level reduction he received under § 3B1.2(b) for being a minor participant. Finally, Anderson argues that the district court erred in its calculation of drug quantity for the purpose of sentencing.
 
 1. Enhancement for Possession of a Firearm
 
 29
 Under U.S.S.G. § 2D1.1(b), a two-level enhancement is called for if a dangerous weapon, including a firearm, was possessed in the commission of a crime. Application Note Three to Guideline § 2D1.1 states that "the adjustment should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected to the offense." The government is not required to show a connection between the weapon and the offense, but only that the weapon was possessed during the offense of conviction or other relevant conduct. United States v. Wetwattana, 94 F.3d 280, 283 (7th Cir.1996). The district court's finding as to whether it was clearly improbable that the firearm was connected to the offense is reviewed for clear error. Id.
 
 
 30
 In this case, Anderson was driving the car in which 107 pounds of marijuana were found. A loaded handgun was found in the same location, a secret compartment behind the backseat, that the marijuana was discovered. There was no testimony or evidence that the gun was in the car for any purpose other than to protect the shipment of marijuana. This is sufficient evidence to show that a weapon was possessed during the offense of conviction. Thus, we find that the district court did not commit clear error in finding that Anderson deserved a two-level enhancement under § 2D1.1(b)(1).
 
 2. Reduction as Minor Participant
 
 31
 Under U.S.S.G. § 3B1.2, the district court may decrease the offense level by four levels if the defendant was a minimal participant, § 3B .2(a), and by two levels if the defendant was a minor participant, § 3B1.2(b). "When a defendant requests a decrease in his offense level, he has the burden of demonstrating that he is eligible for the reduction by a preponderance of the evidence." United States v. Nobles, 69 F.3d 172, 190 (7th Cir.1995). Anderson must show he was a minimal participant because he was "plainly among the least culpable of those involved in the conduct of a group," or a minor participant because he was "less culpable than most other participants." U.S.S.G. § 3B1.2, comment. (nn.1, 3). A person who is not the driving force behind a crime, but nonetheless plays an integral role, is not entitled to a reduction under § 3B1.2(b). See Nobles, 69 F.3d at 190. We review the district court's findings under § 3B1.2 for clear error. United States v. James, 113 F.3d 721, 731 (7th Cir.1997).
 
 
 32
 Although conceding that Anderson is less culpable then Walls, the government argues that Anderson cannot be called a minimal participant because he played an integral role in the crime. We agree. Anderson was hired by Walls to drive a shipment of marijuana from California to Indiana. The conviction demonstrates Anderson's awareness of the nature and scope of the criminal activity he engaged in with Walls. Thus, we cannot conclude that the district court committed clear error by applying a two-level downward adjustment, under § 3B1.2(b), instead of the four-level reduction, under § 3B1.2(a), requested by Anderson.
 
 3. Evidence of Drug Quantity
 
 33
 Anderson argues that the district court erred in finding the quantity of drugs attributed to him was 107 pounds. According to Anderson, only 37.3 pounds of marijuana, the amount stipulated to before trial from the four bags tested by the government, should have been used determining the offense level under U.S.S.G. § 2D1.1(c). Anderson asserts that because the additional 69.7 pounds of marijuana had not been examined by a forensic scientist it should not have been added to the stipulated amount to determine drug quantity. Anderson concludes that the correct measure, 37.3 pounds, would have resulted in an offense level of 16 rather than the level of 20 he received. Although Anderson concedes he failed to object at sentencing, he claims relief under the plain error standard under Fed.R.Crim.P. 52(d).
 
 
 34
 The government has the burden of establishing the drug quantity attributable to the defendant by a preponderance of the evidence. See, e.g., United States v. Hall, 109 F.3d 1227, 1233 (7th Cir.1997). The district court's calculation of drug quantity is a finding of fact reviewed for clear error. Id Here, Anderson claims, for the first time on appeal, that the district court improperly established the drug quantity attributable to him. Rule 52 states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Thus, we review the district court's determination for plain error. See United States v. Olano, 507 U.S. 725, 730 (1993) (finding Rule 52 provides a court of appeals a limited power to correct errors that were forfeited because they were not timely raised in district court).
 
 
 35
 The parties stipulated before trial that four bags, randomly selected and tested from the ten seized during the second stop, contained marijuana. At trial, defense counsel suggested during cross-examination that the remaining six bags might not contain marijuana. In response, the government requested that the jury be allowed to examine and compare the contents of one of the stipulated bags with the remaining six bags. The court granted the government's request. Snyders testified that ten packages, all approximately the same shape, size, smell and wrapping, were seized from the hidden compartment behind the back seat of the car Anderson was driving. He also testified that the four packages analyzed were randomly selected. Furthermore, Walls testified that he was transporting approximately 100 pounds of marijuana. We cannot conclude that it was clear error for the judge to have found, by a preponderance of the evidence, that 107 pounds of marijuana were attributable to Anderson. Certainly it was not plain error.
 
 II. Conclusion
 
 36
 For the foregoing reasons, the district court's judgment is AFFIRMED.